## THE STATE v. JULIUS R. BERSCH, HAROLD G. GILMORE and HARRY C. IMEL, Appellants.

### Division Two, December 23, 1918.

1. **INDICTMENT:** Arson. Where a crime is defined by statute, an indictment which substantially follows its language is sufficient, provided the statutory language sets forth all the constituent elements of the offense; and the statute concerning the burning of goods for the purpose of defrauding insurance companies does that.

2. ———: ———: **Manner of Intended Fraud.** An indictment charging arson is not defective because it does not specify in what manner defendants intended to defraud the insurance companies named. That could be done only by setting forth the evidence, which is never necessary in framing an indictment.

3. ———: ———: **Name of Owner: Facts Constituting Fraud.** An indictment charging the burning of insured goods for the purpose of defrauding insurance companies, need not state who was the owner of the insurance, or the facts constituting the intended fraud.

4. ———: ———: **Ownership of Building.** The indictment is not defective because it does not allege that defendants were stockholders in the corporation which owned the property burned, or otherwise interested in it or its affairs. It is immaterial in whom was the ownership of the building.

5. ———; ———: **Ownership of Policies: Assignment.** An allegation that a certain company was the owner of the property burned and that said property was insured in its favor by several named companies at the time of the fire is a sufficient allegation that the company was the legal holder of the policies. It is immaterial how it received them; it is immaterial whether they were transferred to it directly by the corporation of which it was the immediate successor, or through an intermediary; and the indictment was not defective because it did not state by whom the policies, issued to another corporation, were transferred to the one in which defendant was the principal stockholder.

6. ———: ———: **Knowledge That Property Was Insured: Included in Intent.** An indictment charging defendant with burning a stock of goods with intent to defraud named insurance companies, containing every element of the crime as defined by the statute, is not defective for that it does not in express words charge that defendants knew the insurance existed. It charges intent, and intent could not exist without knowledge.

7. **CONSPIRACY: Establishment: Sufficient to Admit Evidence of Statements Against Each Other.** A conspiracy may be established by circumstantial evidence, and it is largely within the discretion of the trial court to determine when it is sufficiently established to permit evidence of statements made by one of the alleged conspirators against the others. Anything said or done by one of the conspirators with respect to the purpose of the conspiracy during its existence is admissible against all of them, whether said in the presence of each other or not.

8. **ARSON: Evidence of Other Crimes: Intent.** Where the evidence tending to prove the arson charged is circumstantial, proof that other fires were caused by the same parties is competent as showing intent, whether committed before or after the one charged.

9. ———: ———: **Participated in by Only Some Defendants: Competent Against All.** If evidence is admissible as against one of the defendants it will not be excluded on the ground that it is incompetent against others. Evidence of other crimes is not admissible unless some of the defendants are shown to have had some connection with it. But where the owners of goods and insurance agents are jointly indicted and tried, as co-conspirators in the burning of a stock of goods for the purpose of defrauding insurance companies, evidence that said agents were persistent firebugs and attempted to make arrangements with two other companies to

State v. Bersch.

have their goods over-insured and then burned, is competent against such insurance agents, and being competent against them it cannot be excluded on the ground that it is inadmissible against the other defendants who had no connection with the said other schemes. However, in such case the court should instruct as to the proper application, purpose and effect of such evidence.

10. EVIDENCE: Arson: Knowldge of Insurance. A defendant's knowledge that the property burned was insured can be shown by circumstances. Direct evidence is not essential.

11. ———: ———: Instruments Used in Other Crimes. An exhibit to the jury of specimens of gasoline and explosives taken by employees of one of the defendants to another fire he had arranged is proper, since it is permissible to show his attempt to cause a fire at such other place.

12. ———: ———: Price Paid For Goods Burned. Evidence of what defendant paid for the stock of goods which were burned is competent, especially where it is also shown that a fire was in contemplation at the time he bought them, since the evidence shows his estimate of their value as compared with the amount of insurance.

13. ———: ———: Policies. It is proper for the State in an arson case, in which defendant is charged with an attempt to defraud insurance companies, to introduce the policies in evidence.

14. ———: ———: No Objection. It will not be ruled that it was erroneous in an arson case to admit parol evidence to prove the contents of prior insurance policies, if no objection was made to the testimony, or it was brought out by appellant's counsel.

15. ———: ———: Irrelevant Matter. What caused the disagreement between defendant and an associate in business and their separation when defendant bought his interest in the company which owned the goods afterwards burned, is wholly irrelevant in the arson case.

16. INSTRUCTION: Arson: Conspiracy: Continuance After Crime. Where the crime charged was the burning of a stock of goods for the purpose of defrauding the insurers, and the conspiracy was established, an instruction defining a conspiracy and telling the jury that if they believed from the evidence that the burning was caused for the purpose of fraudulently obtaining money for which the property was insured "the conspiracy would exist until the money was obtained," was proper, although there was no evidence that defendants had attempted to collect the insurance money.

17. ———: Comment on Evidence. An instruction restricting the application of a certain character of evidence to the purposes for which it is competent, is not an improper comment on the evidence.

18. **COUNSEL: Withdrawal from Case.** Any conduct on the part of a client during the progress of litigation which would tend to degrade or humiliate the attorney, such as an attempt to sustain his case by unlawful means, is sufficient cause for withdrawal from the case. Ordinarily the attorney, even when it becomes his duty to withdraw, must give his client proper notice before his withdrawal, so that the client may employ other counsel; but if the cause comes suddenly during the progress of the trial, the court may permit him to withdraw immediately, and prevent injury to the client by continuing the case for a sufficient length of time to enable him to procure other counsel.

19. **JURY: Attempt to Bribe: Withdrawal of Counsel: Discharge: Cautionary Instruction.** After the trial of defendants for arson had progressed several days, a juror informed the judge that on the previous night an attempt had been made to bribe him. Thereupon he was sworn, and stated, in the presence of the other jurors and counsel for both sides, and without objection, that on the previous evening a brother-in-law of one of the defendants approached him and requested that he do the best he could for said defendant, offering him fifty dollars, which he said was not a bribe but to pay him for the time he was spending on the case. The juror at first repulsed the man, but finally took the money and exhibited it to the court. Thereupon the attorney for the State asked the juror and each of the others if the facts so revealed would influence them in their verdict, and they each and all answered that they would not, and that they had acquired no prejudice by reason of the revelations. Counsel for defendant then, in the presence of the jury, stated they would withdraw from the case, and counsel for the State protested against their withdrawal, but counsel for defendants said they had so far tried the case in a belief in defendants' innocence, but in view of the developments they could not in sincerity present an argument to the jury for them, and would not be connected with a case in which corruption was employed. The court permitted them to withdraw, and continued the case until a later date in order to permit defendants to procure other counsel, and on that day other counsel appeared for them and filed a motion for a further continuance, which was granted, and then they filled a motion for a discharge of the jury, which was overruled. The court instructed the jury that each and all of the defendants were innocent of any attempt to bribe one of their number, that they were not responsible for nor to blame for the withdrawal of their former counsel, and that in their deliberations they should not permit the occurrence in any way to influence them. The verdict was guilty of arson in the third degree. *Held, first*, that the court did not err in permitting counsel to withdraw from the case; *second*, whether or not the court erred in permitting the juror to relate the facts of the attempted bribery in the presence of the jury will not be ruled, because no objec-

tion thereto was made; and, *third*, the court did not unwisely or improperly exercise its discretion in refusing to discharge the jury on defendants' motion made after other counsel were employed.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*Bass & Bass, Elliott W. Major* and *Charles G. Revelle* for appellant.

(1) (a) The indictment is insufficient in that it does not allege the means by which the defendants intended to defraud the insurance companies, whether by collecting the insurance after the fire or by some other means. State v. Greer, 243 Mo. 599; State v. Green, 111 Mo. 585; State v. Reed, 117 Mo. 604; State v. Holden, 48 Mo. 93; State v. Austin, 113 Mo. 538. (b) The indictment after alleging that the property was owned by and insured to the Gilmore-Bonfig Decorating Company, alleges an intent to defraud on the part of the individual defendants, but does not allege that they were stockholders in said corporation or had any connection therewith or could have so acted as to cause the Gilmore-Bonfig Decorating Company to defraud the insurance companies, since the indictment discloses that they were in no position to individually do this unless they were acting in conjunction with the corporation and no such conjunction or connection is alleged. State v. Greer, 243 Mo. 599. It therefore fails to allege facts which would show that it was even possible for the defendants to defraud the insurers. (c) The indictment does not allege that the defendants knew that the property owned by the Gilmore-Bonfig Decorating Company was insured. State v. Greer, 243 Mo. 599. (d) The indictment alleges that the policies of insurance in existence at the time had been assigned and transferred to the Gilmore-Bonfig Decorating Company without alleging by whom said policies had been assigned and

276 Mo.—26.

transferred and does not inform the defendants of this material fact. (2) (a) The court erred in admitting testimony as to the acts, statements, conduct and whereabouts of Milner and Greenberg, such statements, acts and conduct taking place in the absence of the defendants and there being no evidence of any conspiracy or connection between the defendants and said Milner and Greenberg. State v. Daubert, 42 Mo. 239; State v. Walker, 98 Mo. 95. (b) The court erred in admitting the testimony relating to the Christen Brothers' conspiracy and the proposed Shelly fire. Fish v. United States, 215 Fed. 544; State v. Spray, 174 Mo. 569; State v. Reed, 85 Mo. 194; State v. McWilliams, 267 Mo. 437; State v. Wade, 267 Mo. 249. (c) The court particularly erred in permitting the State to exhibit to the jury the gasoline, powder, fuse, explosives, etc., which were taken from Milner and Greenberg by police officers at the place and scene of the proposed Christen Brothers' fire. (3) (a) The court erred in permitting one of the jurors to testify in the presence of the other jurors that a bribe had been given him by a brother-in-law of one of the defendants and in permitting said juror to exhibit in the presence of the jury the bribe money alleged to have been given him and in permitting said juror to be examined in the presence of the other jurors in relation to all such matters and things. (b) In permitting defendants' counsel to make the various prejudicial statements they did make in the presence of the jury at the time they first announced their withdrawal from the case. (c) In permitting defendants' former counsel to make the statements and do the things they did in the presence of the jury after they had announced their withdrawal from the case. (d) In permitting defendants' counsel to withdraw as counsel in the presence of the jury. (e) In permitting the State's counsel to make the statements and commit the acts they did in the presence of the jury at the time of and subsequent to the withdrawal of defendants' counsel. (f) In allowing any proceedings of any character or kind after the withdrawal of defendants' counsel and at a time when de-

fendants were not represented in the court and without having first given the defendants an opportunity to obtain counsel or without appointing counsel to represent the defendants. (g) In permitting the jury to separate and remain separate during a period of ten days or two weeks after defendants' counsel had withdrawn and after an alleged attempt had been made to bribe the jury. (h) The court erred in overruling defendants' motion to discharge the jury after they had secured counsel and after the various above- stated occurrences and performances in the presence of the jury. (4) The verdict of guilty as to Imel is not supported by the evidence. State v. Ruckman, 253 Mo. 487; State v. Greer, 243 Mo. 599.

*Frank W. McAllister*, Attorney-General, *Thomas J. Cole*, Special Assistant Attorney-General, *Henry B. Hunt*, Assistant Attorney-General, for respondent.

(1) The indictment on which this prosecution is based follows the statutory language and is in approved form. Sec. 4511, R. S. 1909; State v. Tucker, 84 Mo. 23; Sherwood's Com. on Crim. Law of Mo., p. 154; Kelley's Crim. Law, p. 528. It was not necessary that the indictment allege that the defendants knew the property was insured. 5 C. J. 567; Com. v. Goldstein, 114 Mass. 276; Arnold v. State, 168 S. W. (Tex. Crim. App.), 123. (2) The evidence of other fires was admissible. State v. Hill, 201 S. W. 60; State v. Meyers, 82 Mo. 564; State v. Hyde, 234 Mo. 226, 233; State v. Jones, 171 Mo. 401; State v. Wilson, 223 Mo. 168; State v. Donaldson, 243 Mo. 475; State v. Bailey, 190 Mo. 280; State v. Spaugh, 200 Mo. 594; State v. Mix, 15 Mo. 160; State v. Balch, 136 Mo. 109; State v. Pennington, 124 Mo. 392; State v. McClard, 160 Pac. 130; State v. Huffmann, 73 S. E. 293; Knight v. State, 58 Nebr. 231; People v. Freeman, 145 N. Y. S. 1163; People v. Morin, 205 N. Y. 281; Mitchell v. State, 140 Ala. 120; State v. McMahon, 17 Nev. 374; Com. v. McCarthy, 119 Mass. 354; 2 R. C. L. 517; Underhill

Crim. Evid. (2 Ed.), sec. 89; Spurr v. United States, 87 Fed. 711; Schultz v. United States, 200 Fed. 236; Insurance Company v. Bank, 72 Fed. 422; McGlasson v. State, 37 Tex. Crim. 624; People v. Donaldson, 255 Ill. 32; People v. Duffy, 212 N. Y. 66; Colt v. United States, 190 Fed. 306; United States v. Snyder, 14 Fed. 556; 1 Wigmore on Evid. sec. 320. (a) Evidence of attempted fires was properly admitted. Sec. 4894, R. S. 1909; State v. Wilson, 223 Mo. 168; State v. Donaldson, 243 Mo. 475; State v. Turley, 142 Mo. 403. (b) The court did not err in allowing the witnesses to detail the facts of the other crimes. State v. Wilson, 223 Mo. 169; State v. Turley, 142 Mo. 411. (3) The court did not err in permitting counsel for the defendant to withdraw from the case during the trial thereof. Under the facts of this case appellants' counsel had the right to withdraw. 6 C. J. 674; Genrow v. Flynn, 166 Mich. 567; 35 L. R. A. (N. S.) 960; Ann. Cas. 1912D, 638; In re Dunn, 205 N. Y. 402; Tenney v. Berger, 93 N. Y. 524, 45 Am. Rep. 263; Mathenv v. Farley, 66 W. Va. 684; 2 Mechem on Agency (2 Ed.), sec. 2254; Thornton on Attys. at Law, sec. 139, pp. 243, 244. (4) All assignments in appellants' motion for a new trial predicating error upon the alleged attempt to bribe juror Lang should be disallowed, for the reason that there are not objections of record to any of the poceedings with reference to such alleged attempt to bribe. (5) The court properly conducted the inquiry as to this alleged attempt to bribe in the presence and hearing of the jury. Harvey v. Beard, 172 Pac. 420; Van Loon v. St. Joseph, 195 S. W. 740; Com. v. Tilly, 33 Pa. Sup. 37; Mix v. N. Am. Co., 209 Pa. St. 644. (6) The fact that the jury in this case separated will not invalidate their verdict. The jury separated with the consent of the court, appellants, and counsel; furthermore, consent to separate is presumed where the record shows separation and no objection. Sec. 5232, R. S. 1909; State v. Brown, 75 Mo. 317; State v. Dougherty, 55 Mo. 69; State v. Carlisle, 57 Mo. 102; State v. Matrassy, 47 Mo. 295; Bennett's Case, 106 Va. 838;

Ossenkop v. State, 86 Nebr. 543. (7) The failure of the court to discharge the jury would have been erroneous only if prejudice on the part of the jury had been shown. 29 Cyc. 805; 20 R. C. L. 251, sec. 34. Appellants should have filed affidavits as to the prejudice of the jury with their motion for a new trial in order to bring same to the attention of this court. Van Loon v. St. Joseph, 195 S. W. 738; State v. Mace, 262 Mo. 157; State v. Gonce, 87 Mo. 630; State v. Howell, 117 Mo. 342; State v. Williamson, 106 Mo. 169. The power of discharging a jury is discretionary with the court and should only be exercised in cases of manifest, urgent, or absolute necessity. 12 Cyc. 270; 17 Stan. Ency. Proc., 612; United States v. Perez, 19 Wheat 579; Thompson v. United States, 155 U. S. 274; Simmons v. United States, 142 U. S. 153; United States v. Bigelow, 14 D. C. (3 Mackey) 425; Com. v. Fells, 9 Leigh (Va.). 617; Mix v. North Am. Co., 209 Pa. St. 644; Stocks v. State, 91 Ga. 839; People v. Fishman, 119 N. Y. S. 91; Anderson v. State, 86 Md. 481; Com. v. Purchase, 2 Pick. (Mass.) 523. The competency of jurors is for the trial court's determination. Tisdale v. State, 179 S. W. 650; State v. Cunningham, 100 Mo. 388; State v. Williamson, 106 Mo. 169; State v. Rasco, 239 Mo. 561; State v. Ihrig, 106 Mo. 267; State v. Bauerle, 145 Mo. 15; State v. South, 145 Mo. 666; State v. Jackson, 167 Mo. 296. (8) The court limited all evidence as to Milner, who participated in the attempt to burn the Christen Bellows plant, to defendant Bersch, by its instructions. (9) Instruction No. 1, given by the court, is correct as it is based on the evidence and the indictment. 5 C. J. 567; Com. v. Goldstein, 114 Mass. 276; Arnold v. State, 168 S. W. (Tex. Crim. App.) 123. (10) The instruction telling the jury that the conspiracy would exist until the money was obtained, that being the object of the conspiracy, was correct. State v. Hill, 201 S. W. 61; State v. Roberts, 201 Mo. 729.

WHITE, C.—The defendants were convicted in the circuit court of the City of St. Louis of arson in the

third degree, as defined by Section 4511, Revised Statutes 1909, and appeal from that judgment./ One Herbert O. Baker was associated with the defendants in the charge of arson, was indicted, pleaded guilty, and thereafter appeared as a witness for the State.

/The property burned belonged to the Gilmore-Bonfig Decorating Company, in which the defendants Gilmore and Imel were stockholders. Defendant Bersch conducted the Bersch Insurance Agency, and Baker was an employee of that company. It was the theory of the State that Gilmore and Imel, and Bersch and Baker, formed a conspiracy for the purpose of placing a large amount of insurance on the property and causing the fire. The property was situated at 4455 Olive Street, in the City of St. Louis, and originally was owned by the Wright-Gilmore Decorating Company, in which company Gilmore owned a large amount of stock, while one Wright also owned a large amount of stock and was associated with Gilmore in managing the business. The company carried a stock of goods consisting of wallpaper, carpets, draperies, brick-a-brac, rugs, drawings, sketches and paintings. Disagreements arose between Gilmore and Wright, and quarrels between the two finally resulted in the purchase by Gilmore, April 26, 1915, of the entire property of the company for about ten per cent of its estimated value, paying for it about four thousand dollars. The Gilmore-Bonfig Decorating Company was immediately incorporated and the transfer was made to it. Sixteen insurance policies which had been taken out on the property by the Wright-Gilmore Decorating Company, insuring the property for an amount aggregating $35,000, were assigned by the Wright-Gilmore Decorating Company to the Gilmore-Bonfig Decorating Company. Imel and Gilmore apparently had the management of the new company and, so far as the evidence shows, owned all or nearly all the stock.

The fire occurred in the afternoon, July 24, 1915. Persons who observed it described it as breaking out suddenly. There appeared to be a sort of explosion, glass

was thrown into the street, the front doors were thrown out upon the sidewalk and into the gutter. The fire was difficult to extinguish by the firemen on account of oil which appeared to become mixed with the water where it accumulated in the cellar. Defendants said the inflammable substance indicated by the explosion was carried in stock in the form of paints.

In proof of the conspiracy and agency of the defendants in causing the fire, the State introduced several witnesses to show statements made by Gilmore and the other defendants. Baker, who was associated with Bersch in the insurance business, testified that Gilmore told him before he bought out the Wright-Gilmore Decorting Company that he wanted to get rid of Wright and get a new partner so he could have a fire. Baker then conferred with Bersch, who had placed the insurance on the property and advised him to cancel the policies. Bersch refused, and instead of doing so the two insurance men, Baker and Bersch, had a conference with Gilmore in which Gilmore told them that if the thing could be arranged they would have a fire and all would make more money than if the policies were canceled. Conferences regarding this matter occurred several times and Bersch agreed with Gilmore that they ought to have a fire. Gilmore endeavored to have Bersch increase the insurance. This, however, was not done. Bersch for his part said he would send some man out who would take care of the matter of having the fire. Imel, a day or two after the fire, told witness Baker that he and Gilmore locked the store on the day of the fire and met on the outside a man to whom they gave the key and who Imel said he supposed went in and set fire to the place. On the day of the fire Baker called up Bersch and told him to call Gilmore and tell him a party would be out on the next car and arrange about the fire. This, presumably, was the man referred to by Imel as the one to whom they gave the key.

One W. G. Rayson testified for the State that he had worked about eight years for the Wright-Gilmore Decorating Company as foreman and superintendent.

Mr. Gilmore was president at the time. A few days before the transfer of the business and stock to the Gilmore-Bonfig Decorating Company, while negotiations were pending for that transfer, Gilmore told the witness that he was thinking of buying the business and asked witness to go in with him in the new company. He broached the subject more than once and on one occasion said to the witness that he would not be taking any chances in going into it, and added: "We cannot lose anything; we can always have a fire." In that conversation, which occurred three or four days before the purchase. Gilmore mentioned to the witness that Imel was taking stock in the business and stated that the business had not been making money. Afterwards Imel asked witness if he were going into the new business, and upon receiving a negative reply Imel said, "The boss says we cannot lose anything, we can always have a fire."

John J. Holt testified for the State that he had been a stockholder in the Wright-Gilmore Decorating Company and was connected with the company as secretary and bookkeeper. At one time, in January, 1915, Gilmore asked witness to make a copy of the ledger. Before finishing it he destroyed what he had done. Gilmore told him he might need the copy in case of a fire; that under the conditions of the business their stock would bring only about twenty-five cents on the dollar; that he had been working with one of the insurance men for some time and the only solution he could see was to strike a match to it. He advised the witness to think the matter over, admonished him to say nothing about it, and said they would get their money after the fire. Gilmore subsequently took the witness to the Planters Hotel to meet Bersch, the three lunched together and during that conference Gilmore said the stock would not bring ten cents on the dollar, but after the fire witness could get a check for the full amount of his share; if he chose he could visit his country-cousin and when he came back his check would be waiting for him. Nothing was said at the time about how the fire was to

be accomplished, but Gilmore said to Bersch that he and Bersch would attend to the insurance and witness could attend to the inventory of the stock. Gilmore previously had asked witness to change the figures in the books to corespond to the increased insurance, which witness had refused to do.

On the day of the fire, just after the explosion on the premises of the Gilmore-Bonfig Company, a man hatless, with a wound in his neck and very much excited, came into a drug store on Olive street near the place of the fire. The pharmacist examined the wound and directed his son to lead the man out on Olive street and take him to a physician. Just at that time an automobile came along, and the man broke away from the young man who had him in charge, jumped into the machine and disappeared. This man afterwards was identified as one Milner.

Testimony as to all the above facts was introduced without objection on the part of the defendants. There was no objection on the ground that a conspiracy was not first shown, to any of the statements attributed to the defendants.

Shortly before the fire two boxes, under the direction of Baker, were hauled from 214 North Second Street, where Shelley-Gould Manufacturing Company manufactured supplies for the wholesale grocery trade, and were taken to 4455 Olive Street where the Gilmore-Bonfig Company was operating, and were placed in the basement of that building. They were heavy wooden boxes about forty inches high, twenty-four to thirty inches broad, and about the same depth. There was nothing on the boxes to indicate their contents. One M. B. Shelley, who was operating the business of the Shelley-Gould Manufacturing Company, testified that the defendant Bersch told him the contents of the boxes were to be used to burn the place. The boxes were moved by the Central Moving Company, whose driver testified that a board broke off of one of the boxes and inside he saw a sort of steel cask packed in excelsior.

Baker directed him to take the box in and nail the board on again.

Evidence was introduced to show that in the Spring of 1915, before the fire, those same two boxes were put in the basement of the Shelley-Gould Manufacturing Company at 214 North Second Street; that Baker and Bersch arranged with M. D. Shelley, who was manager of the Shelley-Gould Company, to increase by a large amount the insurance on his stock, which consisted of supplies for wholesale grocery houses, and produce a fire. The insurance was very much increased, but subsequently canceled by the insurance company, and the scheme abandoned. The boxes mentioned were sent there by Bersch and Baker for the purpose, as stated by Bersch, of burning the building; the contents of the box, if sprinkled on wood, would burn right through and could be extinguished only with pyrene.

This evidence was objected to on the ground that it was not shown that either Gilmore or Imel participated in that attempted arson; it was an entirely separate and distinct enterprise, and unconnected with the arson for which the defendants were on trial. Error is claimed to the action of the court in admitting it.

In August or September, after the fire, a plan was laid to trap the defendants, who were suspected of causing the fire, and secure evidence against them. For that purpose one Joseph C. Christen was induced to cooperate with the detectives at his place of business on Main and Dock streets, where he manufactured bellows and furniture specialties. Baker and Bersch made several trips to his place, sometimes going together and sometimes separately, and in these visits they discussed arrangements for placing extra insurance on Christen's plant and causing a fire. Through Baker and Bersch a large amount of extra insurance was placed on the property and finally, on the 11th of September, a wagon load of gasoline and other inflammable stuff was driven to the place by four men. These men were sent by Bersch and on their appearance the four were arrested by detectives from the police department. Two of the men

were named Greenberg. One was Milner, otherwise identified as the man injured at the Gilmore-Bonfig fire and who ran away in an automobile, as related above. The fourth man was named "Splits" Connors.

This evidence was objected to on the ground that the defendants Gilmore and Imel were not shown to have any connection with the incident, which was an attempt by Baker and Bersch to produce a fire on insured property, more than a month after the fire under consideration, and in no way connected with it, and error is assigned to the ruling in admitting it.

I. Objection is made to the indictment, appellants claiming it is defective in several particulars. It is predicated upon Section 4511, Revised Statutes 1909, and sets out that the defendants willfully, maliciously and feloniously set fire to and burned a certain stock of merchandise, the property of Gilmore-Bonfig Decorating Company, a corporation, "with the felonious intent then and there and thereby to defraud, damage and prejudice" certain insurance companies, naming them, the insurers of said goods, wares, etc., and that said goods, wares and merchandise were at the time of the setting fire to and burning same, insured unto the said Gilmore-Bonfig Decorating Company against loss and damage by fire by the several insurance companies named, in the amounts stated; that the said contracts of insurance, issued by the said insurance companies, naming them, were executed by and between such companies and the Wright-Gilmore Decorating Company, a corporation, "which said contracts and policies of insurance prior to the aforesaid setting of fire to and burning of the aforesaid property were duly assigned and transferred unto the said Gilmore-Bonfig Decorating Company."

*Indictment.*

The objections to the indictment are as follows: First, it does not specify in what manner the defendants intended to defraud the insurance companies named; second, it does not allege that any of the defendants were stockholders in the corporation which owned the

property, or were otherwise interested in it or its affairs; third, it is not alleged that the defendants had any knowledge of the insurance then on the property.

The general rule is that where a crime is defined by statute, an indictment which substantially follows the language of the statute is sufficient, provided the statutory language sets forth all the constituent elements of the offense. [State v. Hilton, 248 Mo. l. c. 530; State v. Perrigin, 258 Mo. l. c. 236; State v. Hunter, 171 Mo. l. c. 439.] The indictment in this case follows exactly the language of the statute under which it is framed. If that statute sufficiently defines the crime in all its elements, then the indictment is sufficient. It has been held by this court that an indictment under this section is sufficient if it follows the language of the statute. [State v. Tucker, 84 Mo. 23.]

As to the first objection, if the indictment were obliged to set out the manner in which the intent to defraud should be accomplished it would necessarily set out the evidence, which is never necessary in framing an indictment. That feature of the crime consists in the attempt to defraud or prejudice the insurer, *as an insurer,* and that could be accomplished only by causing a loss by fire and thereby an unjust liability on the contract of insurance. The rule is that the indictment in such case need neither set forth the name of the owner, who was the beneficiary of the insurance, nor state the facts constituting the intended fraud. [1 Wharton's Criminal Procedure, 471.]

As to the second objection, it is entirely immaterial in whom was the ownership of the building. By the express terms of the statute it is not at all necessary that the accused should have been the owner of, or had any interest in, the property. Such had been the construction of Section 4507 where the immateriality of ownership is not so plainly nor so clearly stated as in Section 4511. [State v. Myer, 259 Mo. l. c. 312-315.] In this connection it is objected that the indictment is bad because, in alleging that the property was insured to the Wright-Gilmore Decorating Com-

pany and the policies transferred to the Gilmore-Bonfig Decorating Company, it does not state by whom they were transferred. This objection is not well taken. The indictment first specifically alleges that the Gilmore-Bonfig Decorating Company were the owners of the property burned and such property was insured unto it at the time of the fire by the several insurance companies. That is sufficient allegation that the Gilmore-Bonfig Company was the legal holder of the policies and it was immaterial how it got them. It did not matter whether the policies were transferred to it directly by the Wright-Gilmore Company or through intermediate transfers.

In support of the third and principal objection to the indictment, it is urged that the defendants could not have been guilty of intending to defraud an insurer unless they knew the insurance existed, which of course is true. The case of State v. Greer, 243 Mo. 599, is cited. In that case it was decided that such knowledge must be proved, but nothing was said about what averments are necessary in order to admit such proof. In other jurisdictions it has been held, construing statutes similar to the one under consideration here. that an indictment charging the violation of the statute need not allege knowledge on the part of the defendant that the building burned was insured at the time. [Commonwealth v. Goldstein, 114 Mass. l. c. 276; Arnold v. State, 168 S. W. (Tex.) l. c. 123.]

**Knowledge.**

In the Massachusetts case it was held the allegation of knowledge was not required because the averment of intent to defraud the insurer necessarily involved knowledge by defendants that the property was insured. This seems to have been the conclusion of this court in the case of State v. Greer, supra. It was there held that there must be *proof* of knowledge in order to establish the *intent* to defraud. The court said, l. c. 606: "Intent to defraud an insurance company is the very essence of the crime of which defendant was convicted. No such intent could exist without knowledge that the property was insured."

The conclusion must be that if proof of knowledge is necessary to show intent, then an allegation of intent involves the existence of knowledge.

The definition of the crime, as stated in the statute, included every element of the offense, and the indictment in the language of the statute was sufficient.

II.    Appellants assert that there was no competent evidence sufficient to establish a conspiracy which included all the defendants.    A conspiracy may be established by circumstantial evidence, and it is largely within the discretion of the trial court to determine when it is sufficiently established to permit evidence of statements made by one of the alleged conspirators as against the others.    Anything done and said by any of the parties to a conspiracy with respect to the purpose of it during the existence of the conspiracy is admissible in evidence against all or either of the other parties, whether said in the presence of each other or not.    [State v. Bobbitt, 228 Mo. l. c. 266; State v. Shout, 263 Mo. 374;    State v. Fields, 234 Mo. l. c. 623;    State v. Roberts, 201 Mo. l. c. 728.]    In this case the evidence of Baker, jointly indicted with defendants, was received without objection so far as the main purpose and effect of the evidence is concerned.    It was shown also that Bersch, Gilmore and Imel, each and all had something to do with procuring the inflammable boxes to be put in the basement of the premises and with procuring the man to set the property on fire.    By other witnesses than Baker it appeared that each of them made statements relating to the purpose of having a fire and showing they were acting together.    All of these statements were admitted without objection.    The evidence was entirely sufficient to establish the conspiracy.

*Conspiracy.*

III.    It is claimed that the evidence relating to the attempted fire at the Shelley-Gould premises and the one attempted at the premises of the Christen Bellows Manufacturing Company was inadmissible for

Other **the purpose of showing intent. In support of**
Crimes. **that objection it is argued that if the State's**
evidence was admissible and tended to show the fire
was set by defendants with intent to defraud, the facts
showing the commission of the crime carried with them
the proof of intent and therefore made inadmissible
evidence of other crimes for the purpose of showing in
tent. If the character of a crime is such as to show
upon its face the intent with which it was done, that is,
if the act speaks for itself, then such evidence is inad-
missible. [State v. Spray, 174 Mo. 569; State v. Hill,
201 S. W. l. c. 60.]

But in this case the evidence. tending to show arson
is entirely circumstantial, and a fire may be susceptible
of explanation as accidental. To prove that other fires
were caused by the same parties is competent as showing
intent, and it makes no difference in such case whether
the other crime was before or after the one charged.
[State v. Cox, 264 Mo. l. c. 413; State v. Spray,
174 Mo. 569; State v. Young, 266 Mo. 734, l. c.
735; State v. Donaldson, 243 Mo. l. c. 475; State v.
Balch, 136 Mo. l. c. 109; State v. Myers, 82 Mo. l. c.
563.]

It is true that evidence of other crimes is not
admissible unless the defendant is shown to have some
connection with them. [16 C. J. p. 594, sec. 1145;
Kahn v. State, 182 Ind. 1, l. c. 4-5; Raymond v. Com-
monwealth, 123 Ky. 368.] This rule would make evi-
dence of the attempted fire at the Shelley-Gould place,
also the attempted fire at the Christen Bellows place,
incompetent as against Gilmore and Imel. There
was no proof that either of them had any connection
whatever with either of those schemes. That evidence
tended to show that Bersch and Baker, while in the
insurance business, were persistent fire bugs and re-
peatedly worked schemes with owners of property to
over-insure, cause fires and divide the insurance money.
Each of these attempted fires was a separate and dis-
tinct enterprise. The conspiracy between Gilmore, Imel,

Bersch and Baker related only to the Gilmore-Bonfig fire.

However, evidence which is admissible for any purpose cannot be excluded by the court on the ground that it is inadmissible for other purposes. [Moore v. Railroad, 268 Mo. l. c. 37.] And that rule applies where two or more defendants jointly indicted are on trial together. If evidence is admissible as against one of the defendants it will not be excluded because it is incompetent as against the others. In such cases the court should instruct the jury as to the proper appli cation, purpose and effect of such evidence. [State v. Phillips and Ross, 24 Mo. 475, l. c. 484; Union Savings Assn. v. Edwards et al., 47 Mo. 445, l. c. 449; State v. McKinzie, 102 Mo. l. c. 631-2.]

The court instructed the jury that in determining the guilt or innocence of defendants Imel and Gilmore they should entirely disregard the evidence introduced in the case relating to the alleged arrangements to burn the Shelley property, and the alleged arrangements to burn the Christen property. The jury were further instructed that Bersch, Gilmore and Imel were not on trial for any attempt to burn property other than that located at 4455 Olive Street; that although they might believe that Bersch was connected with an alleged plan to burn the Shelley property or the Christen property, they could not for that reason convict Bersch unless they believed that he was guilty in the manner and form charged in the indictment. This sufficiently met the objection of the defendants and brought the evidence within the rule announced above.

IV. It is insisted by defendants' counsel that the State failed to make out a case against Imel; that Sufficient there was a failure of proof to show that he Evidence. knew the property was insured.

It was shown by the testimony of Baker that Imel assisted in causing the inflammable boxes to be sent to the basement of the Gilmore-Bonfig Company; that Imel knew what the boxes were sent there for,

and procured the man to set the building on fire. It was shown further by George Rayson that Imel had worked for the Wright-Gilmore Decorating Company about three or four years as. clerk and salesman before the sale to the Gilmore-Bonfig Company; that Gilmore, in soliciting Rayson to come into the new firm and participate in the proceeds of a fire, informed him that Imel was going to take stock. Soon afterwards Imel approached Rayson and asked him if he were coming into the new business and upon receiving a negative reply Imel argued the matter with him and assured him on the authority of "the boss," "We can't lose anything; we can always have a fire." There were other circumstances indicating Imel's knowledge that the fire would happen. It was unnecessary to prove knowledge of the insurance by direct evidence; it could be shown by circumstances. We think the evidence stated is sufficient to warrant an inference that Imel knew the property was insured, and is otherwise sufficient to sustain a verdict of guilty against him.

V. Several items of evidence are mentioned by counsel for appellants in their brief, as erroneously

**Evidence.** admitted or erroneously excluded by the trial court.

It is said that the court was in error in permitting an exhibit to the jury of specimens of gasoline and explosives which were taken by the employees of Bersch to the proposed Christen fire. Since it was permissible to show Bersch's attempt to cause a fire at that place it was entirely proper to show the means by which he made the attempt and produce specimens of his inflammable material.

It was not error for the court to admit evidence showing what Gilmore paid for the stock of the Wright-Gilmore Decorating Company, because a fire was in contemplation by Gilmore at the time, and that evidence tends to show his estimate of the value of the stock as compared with the amount of insurance which it carried.

276 Mo.—27.

It was entirely proper for the State to produce in evidence the policies of insurance upon the property. It is difficult to see how defendants could have been prejudiced by asking the defendants for the policies in the presence of the jury, but it is claimed the court erred in permitting it. That alleged error is not mentioned in the motion for new trial.

It is complained that parol evidence was admitted to prove the contents of the insurance policies which had been issued to the Wright-Gilmore Decorating Company. We are unable to find in the record that any objection was made to that testimony. On the contrary, much of that evidence was brought out by defendants' attorneys.

It is argued that the court committed error in rejecting evidence to show that Wright was addicted to drink and was guilty of other improper conduct, as the cause of the disagreement between Gilmore and Wright. It is entirely irrelevant as to what caused their disagreement and separation since that testimony would in no way affect the point at issue. Besides, we are unable to see how that sort of testimony would have had any effect or influence; Wright was not even a witness in the case.

VI.   Objection is made to a paragraph in the instructions which told the jury if they believed from the evidence that the burning occurred for the purpose of fraudulently obtaining money for which the property was insured, as defined in other instructions, the conspiracy referred to would exist until the money was obtained. It is argued that the conspiracy, if there was one, was complete, and its purpose accomplished when the fire took place; that there was no evidence that the defendants made an attempt to collect the insurance money. It is further argued that the instruction, if there was such evidence, could not be correct unless it further told the jury they must find the defendant had not abandoned the intent to collect the money after the fire.

*Instructions.*

The instructions for the State given by the court were not separated by number, but were all included in one statement covering several pages. The jury were told what they must find in order to convict; what acts and declarations of one of the co-conspirators, and under what circumstances, would be binding upon the others. Definitions of "conspiracy," "common design," "in furtherance of," and other expressions were given. The gist of the offense was causing the fire for the purpose of defrauding the insurers. That purpose could not be accomplished until the insurers had been made to pay, therefore the common enterprise was not ended until the collection of the insurance money. [State v. Roberts, 201 Mo. l. c. 729.] There was ample evidence to show that such was the purpose of a conspiracy and there was no evidence tending to show the purpose to obtain the money was abandoned at the time of arrest at the Christen place so as to authorize a finding to that effect.

VII. Complaint is made of an instruction which calls the jury's attention to evidence introduced by the State tending to show attempts to burn other personal property with intent to defraud the insurers in addition to the property which the defendants were Comment on Evidence. charged with burning. The jury were instructed that they were to consider such testimony only for the purpose for which it was admitted—for the purpose of showing intent on the part of Julius R. Bersch in relation to the charge for which he was on trial—and that they could not convict Bersch of any other offense than that named in the indictment in this case. The instruction then proceeds as follows:

"The testimony as to such other attempts was admitted only as against the defendant Julius R. Bersch, and you are instructed not to consider such testimony or any part thereof against the defendants Harold G. Gilmore or Harry C. Imel.

"In this connection the court instructs the jury that if a person shall do any act towards the commission of an offense but shall fail in the perpetration thereof or shall be prevented or intercepted in the execution of same, then such act so done with the intent of committing such offense becomes an attempt as that word is used in this instruction."

The first objection made to the instruction is that it is a comment upon the evidence. It does not appear to be open to that objection. It does not mention any particular, specific evidence, but calls attention in general to a certain character of evidence offered by the State and tells the jury the purpose for which it was introduced. This evidence was competent against Bersch, and could not be excluded for that reason, as shown above, and it was necessary for the court to give an instruction restricting its application to Bersch and his alleged intent. The court could not thus restrict the effect and operation of that evidence without calling the attention of the jury to it. This court has held that an instruction of that kind under such circumstances is proper. [State v. Weisman, 238 Mo. 547, l. c. 555.]

Another objection to the instruction is found in the closing paragraph, where the court defines or describes what is meant by the term "attempt.". The word was used in the first part of the instruction and the trial court saw fit to define it, using the words of the statute. [Sec. 4894, R. S. 1909.] If it may be said that it is a word of general significance and its meaning easily understood, it is difficult to see how that definition could have any harmful effect upon the jury or influence their deliberations.

VIII. An incident of unusual interest remains to be considered.

After the trial had progressed for several days, one morning a juror, Charles Lang, informed the judge that on the previous night an attempt had been made to

Attempt to
Bribe Juror.

bribe him.   Thereupon Lang was sworn, and he stated, in the presence of the other jurors and counsel for both sides, that on the previous evening a man named McMahon, who said he was the brother-in-law of one of the defendants, approached him, requesting that he do the best he could for the defendant.   McMahon offered him fifty dollars, which he said was not a bribe but was to pay him for the time he was spending on the case.   Lang at first repulsed McMahon, but finally took the money and exhibited it to the court.

The prosecuting attorney then asked Lang and each of the other jurors, after swearing them, if the facts revealed by his statements would in any way influence them in rendering their verdict.   They each and all answered that it would not; that they acquired no prejudice by reason of the incident.

After this had occurred Mr. Fauntleroy, one of the attorneys for the defendant, arose and in the presence of the jury said that he would no longer continue in the case.   Mr. Cullen, of counsel for defense, stated that such was his position also.   The prosecutor, Mr. McDaniel, protested against the withdrawal of counsel for defense on the ground that weeks had been occupied in preparation for the trial of the case; he felt as if the attempt upon the juror was made for the purpose of procuring a mistrial and, inasmuch as all the jurors had declared the incident would not influence their verdict, he demanded that the attorneys be ordered to continue in the case. He asked that the jury be taken out during the argument which ensued, but that was not done.

Mr. Fauntleroy then explained that, under the circumstances, it would be hypocrisy and insincerity for him and his associates to appear before the jury and present an argument for the defense.   He had tried the case believing in the innocence of the defendants, and in view of the developments he did not purpose to be connected with a case where corruption of the jury had been undertaken.   Mr. Cullen made a similar statement

and declined to go on with the case. The trial judge thereupon said he would allow counsel to withdraw under the circumstances, and would continue the case until a later day in order to give defendants an opportunity to procure other counsel. On the day to which the case was continued other counsel for defendants, Messrs. Bass & Bass, and Major & Revelle, entered their appearance and filed application for further continuance. This application was sustained, and the case again continued to another day, at which time the defendants filed a motion to discharge the jury on account of the proceedings of the court just related. The court overruled this motion and the trial proceeded.

Counsel here assign several errors to the action of the court in respect to this matter. It is asserted that the court erred: first, in permitting the juror who claimed to have been tampered with, to relate the incident in the presence of the jury; second, that the court erred in permitting counsel for defendants to withdraw; third, the court erred in failing to discharge the jury on the motion which defendants made after other counsel were employed.

As to the first alleged error, the juror was sworn, his testimony presented without objection, and all the jurors questioned as to whether the incident would influence their action, before the defendants' counsel withdrew from the case and while the defendants were bound by the acts of the counsel whom they had chosen to represent them.

No objection was made to this testimony, and therefore it is unnecessary to review that matter except as it may be considered in connection with the motion subsequently filed to discharge the jury.

To the permission of the court for counsel to withdraw, no objection was made at the time, but, since defendants claim they were not represented after withdrawal of their counsel in open court, we will treat the action of the court in permitting such withdrawal as properly before us for review.

State v. Bersch.

The contract of an attorney with his. client is an entire and continuous one, and he cannot abandon the service of his client before the termination of his suit without sufficient cause. But there may arise in the conduct of the case reasons why such a withdrawal would not only be permissible but necessary. An attorney, being an officer of the court, is charged with a duty not only to obey the law but to preserve his professional reputation. If a condition arises where that duty conflicts with strict fidelity to his clients' interest, the duty must still be obeyed and his only solution of the difficulty may be withdrawal from the case. It is a rule laid down in the books that any conduct on the part of a client during the progress of litigation which would tend to degrade or humiliate the attorney, such as an attempt to sustain his case by any unlawful means, is sufficient cause for withdrawal from the case. [2 R. C. L., p. 958; Matter of Dunn, 205 N. Y. 398, 1. c. 402; 2 Mechem on Agencies, sec. 2254; Genrow v. Flynn, 35 L. R. A. (N. S.) 960, and notes.]

The relation of attorney and client is of a most confidential and intimate nature. Their reciprocal duties to each other require the utmost good faith and fidelity. It is as much the duty of the client to submit himself to the direction of his counsel in every matter pertaining to the management of the case as it is of the counsel to use all his endeavors in faithful adherence to his client's interest. If the client should do anything or attempt anything which would tend to bring his attorney into disrepute by being connected with unlawful methods, the counsel would do violence to his own professional character if he did not withdraw from the case.

In this case the juror testified he was approached by the brother-in-law of one of the defendants. This fact was not disputed. While this did not necessarily connect the defendants with the matter, nevertheles, counsel evidently were convinced that their clients had some agency in it, and acting upon that conviction they withdrew. They were justified in acting upon appear-

ances as they presented themselves at the time. The trial court properly permitted them to withdraw. Their remaining in the case would have been of little advantage to defendants while entertaining, as counsel did, the ideas which were forced upon them by the incident.

Ordinarily, under such circumstances, an attorney must give his client proper notice before his withdrawal from a case, so that the client may employ other counsel (authorities last cited). The incident here arose suddenly and counsel seem to have acted upon impulse. Defendants were not harmed by the lack of more ample notice before withdrawal, because the case was continued and a sufficient time allowed them to procure other counsel.

The motion filed by counsel afterwards employed presents as its reason why the jury should be discharged the matters just considered, and the refusal of the court to discharge the jury at that time. We will consider them in the light of their probable effect upon the jury.

Questions arising as to the propriety of sustaining a motion of this kind are often resolved in application of the rule that the power to discharge a jury after it has been selected to try a case is largely within the discretion of the trial court and will not be reviewed by an appellate court unless that discretion has been abused. [Hamburger v. Rinkel, 164 Mo. 398; 16 R. C. L. p. 321, par. 126.] The discretion of the trial court is usually called in question when it is exercised in discharging or refusing to discharge a jury for alleged misconduct. In this case the jury could not be discharged on that ground, because the jurors were acting with unquestionable propriety. The idea of the trial judge, and that of counsel for the State, appeared to be that if the jury were discharged jeopardy would have attached to the defendants, requiring their discharge, and this seems to have been the idea of appellants' counsel also.

It appears that there had been a former mistrial in this case on account of the jury being discharged. On

that trial, after substantially all the State's testimony had been adduced, one or more of the jurors received anonymous letters which attempted to influence them against the defendants. When this was brought to the attention of the trial court the jury was discharged and the case continued. The incident related in the present trial was another attempt to tamper with the jury, and thereby, as the trial judge seemed to think, again procure a discharge of the jury. If efforts of that kind always were successful it would be possible for any defendant to procure the discharge of a jury by which he is tried at any time by making some obvious attempt to influence it. Where the *prevailing* party has access to the jury and makes some attempt to influence it, that is sufficient to set aside a verdict and award a new trial. [16 R. C. L. pp. 312, 314, pars. 120, 121.] The danger of allowing a *defeated* party to make a verdict invalid by tampering with the jury is discussed in the case of Harvey v. Beard, 172 Pac. 420. And that was a subject of consideration by this court in the case of Van Loon v. St. Joseph Ry., Light, Heat & Power Co., 195 S. W. 737, l. c. 740. As suggested by Judge GRAVES, who wrote the opinion in that case, "a designing defendant might arrange for just such an attempt, and upon proof of the unconnected attempt to influence a juror have any and all verdicts of a jury set aside."

Doubtless the trial judge concluded that the attempt upon the jury was made by the defendants, or with their consent, and he was properly exercising his discretion in refusing to discharge it.

In consideration of this motion, with respect to the act of counsel, we eliminate the alleged error of the trial court in permitting them to withdraw, having disposed of that question above. It must be kept in mind, too, that no objection was made to the proceeding at the time, and therefore no presumption of prejudice to defendants' rights can be indulged on account of alleged error. We can only consider whether the record shows. that the jury was *in fact* unduly influenced against defendants by the statements of counsel *after* the with-

drawal.   There was nothing before the court to show such fact except the record of what had occurred on the day of counsel's withdrawal.

We do not say that counsel for defendants were acting with entire propriety in expressing their displeasure, and their reason for withdrawing in the presence of the jury.   They seem to have been carried away with indignation caused by the sudden revelation, and possibly said things which on mature consideration they would have considered inappropriate.   It was improper for them, in severing their connection with the case, to do anything which would tend to put their clients' cause in a worse plight than that act itself would leave it.   But testimony of the juror, connecting indirectly one of the defendants with an attempt to influence him, was already before the jury without objection.   The jurors had just been sworn and had each stated that the evidence did not influence him.   The attorneys had a right to withdraw, without regard to the consequences of that act.   Doubtless the trial judge concluded that the impression made upon the jury by the revelation of the juror and the withdrawal of defendants' counsel was not enhanced by counsel's remarks.   The act spoke for itself.   The mischief, if any, was already done.

In instructing the jury the court told them that each and all of the defendants were innocent of any attempt to bribe a member of the jury; that they were not responsible nor to blame for the withdrawal of their former counsel, and in their deliberations they could not or should not permit the occurrence, in any way, to influence them.   The instructions indicate that the trial judge endeavored to remove from their minds any impression they might have received that such withdrawal was because of any belief in defendants' guilt of the crime for which they were on trial.   The jury doubtless understood that such withdrawal was because of defendants' supposed connection with the unlawful attempt to influence the jury while counsel were managing the case, a matter which they were told should not

influence them.    The instructions on the whole were very fair to defendant.

It was a delicate matter requiring a nice and discriminating judgment and we are not prepared to say that the discretion of the court was exercised unwisely or improperly.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court.    All of the judges concur.