THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HENRY C. STENECK AND GEORGE W. STENECK, PLAINTIFFS IN ERROR.

Argued January 19, 1937—Decided May 19, 1937.

Before Justices TRENCHARD, BODINE and HEHER.

For the plaintiffs in error, *John G. Flanigan* and *Alexander Simpson*.

For the defendant in error, *Daniel O'Regan,* prosecutor of the Pleas, and *Atwood C. Wolf,* assistant prosecutor of the Pleas.

The opinion of the court was delivered by

TRENCHARD, J. The plaintiffs in error, Henry C. Steneck and George W. Steneck (herein called defendants), were convicted upon an indictment charging a violation of section 17 of the "Act concerning trust companies" (*Comp. Stat., p.* 5661, as amended by *Pamph. L.* 1929, *p.* 699), in that they willfully, unlawfully and knowingly subscribed and exhibited to Frank H. Smith, then commissioner of banking and insurance, a certain paper, being a report in writing of the condition of the Steneck Trust Company as at the close of business on March 25th, 1931, which report of condition was false and untrue, and was so subscribed and exhibited with intent to deceive the commissioner as to the condition of the company.

The defendants assign errors and specify causes for reversal pursuant to section 136 of the Criminal Procedure act.

At the trial it appeared that the Steneck Trust Company was incorporated under the "Act concerning trust companies" on April 13th, 1914, and opened for business in the city of Hoboken immediately thereafter. John Steneck, its founder, died in the early twenties, and left his sons and family in control. One son, the defendant Henry C. Steneck, succeeded to the presidency and became the guiding head. The evidence tended to show, without substantial dispute, that he "ran, managed and supervised" the company, and the other son, the defendant George W. Steneck, was vice-president, and, among other things, largely had charge of the buying and selling of the stocks, bonds and other securities for the company, and it was proved, if not expressly admitted, that the directors "did not run the bank." In fact the evidence tended to show that the Steneck Trust Company was a strictly family affair and that its management and affairs were rigidly controlled and dominated by Henry C. Steneck, assisted by his brother, George.

The proofs show that a "call" was sent out to all trust companies within this state to render to the banking commissioner a true report of conditions as at the close of business March 25th, 1931. The authority for issuing this call is contained in section 16 of the Trust Company act. The forms for these reports of condition are prescribed and furnished by the commissioner, and the act provides that they must be verified by the oaths of the president or vice-president and the secretary or treasurer of each trust company, and attested by the signatures. of at least three directors. Every such report must "exhibit in detail and under appropriate heads the resources and liabilities  *  *  *  at the close of any day past specified by the commissioner, and shall be transmitted to him within twenty days after the receipt of the request or requisition therefor by him." It must also be published at least once in a local newspaper, and proof of such publication must be affixed to the report when filed.

The penalty for filing a false report is set out in section 17 of the act, which provides:

"Every incorporator, stockholder, director, officer, agent or clerk of any trust company or proposed trust company who willfully and knowingly subscribes or makes any false statement of facts, or any false oath or affidavit, or false entries in the books of such trust company, or proposed trust company, or knowingly subscribes or exhibits any false paper with intent to deceive any person authorized to examine as to the condition of said trust company, or willfully or knowingly subscribes to or makes any false report, shall be guilty of a high misdemeanor, and punished accordingly."

The "Statement of Condition of the Steneck Trust Company" so called for, was signed and sworn to by Henry C. Steneck, president, and was attested by George W. Steneck, a director (among others) on April 7th, 1931, and was published in a local newspaper on April 8th, 1931, and on April 10th, 1931, it was received and filed in the office of the commissioner of banking at Trenton.

The indictment charged, and it was proved at the trial without any contradiction, that Schedule G of this report was false and untrue. The evidence tended to show that the defendants, Henry C. Steneck and George W. Steneck, knew it was false and untrue in the following vitally material and highly important particulars, viz.: the market values of the company's stocks and securities as of March 25th, 1931, were misrepresented and falsely overstated to the extent of $742,837.64. The report admitted a shrinkage of only $241,289.45 in the market value of the securities, but it should have disclosed a total shrinkage of some $984,127.09. Had this true figure been disclosed, it would have led to the immediate closing of the trust company's doors by the commissioner of banking pursuant to section 22 of the act. Had its true condition been reported, it would have disclosed that the item of $250,000 of undivided profits was wiped out, the surplus of $500,000 would have likewise disappeared and the capital of $1,000,000 have been shown to have been impaired to the extent of $234,127.09.

Because the true condition was thus fraudulently concealed from the commissioner, the trust company was not closed

until two and one-half months later when banking examiners were making their regular semi-annual audit, and meanwhile, during the period from April 10th, 1931, when the false "call" report was filed, to June 27th, 1931, when the doors were finally closed, approximately four hundred and sixty-seven new special or savings accounts, and ninety-seven new checking or commercial accounts were opened.

Now the defendants contend that "there is no proof in the case that the Stenecks had anything to do with the preparation" of the false report. We think the evidence justified the inference that they were responsible for the false statement as to market values. They claimed, and testified in effect, that the market values were supplied by one Schwartz. But the latter testified that both defendants "would examine the report at the time they signed it" and sometimes changed it. Both defendants repeatedly testified that they signed the report without bothering to examine it or to check up on the market values reported. They admitted that they knew their obligation to make and exhibit a true report; knew that failure to perform such obligation constituted a criminal offense. They knew that the report was being signed for the purpose of complying with the lawful demand made therefor by the banking commissioner and that it would be filed with him in Trenton. The evidence tended to show that the defendants bought and sold the securities for the company and had charge of the securities department, and that they both checked up the daily market values of their own securities, but testified nevertheless, that they "were not interested" in watching the market quotations of the trust company's securities, and we believe that the jury could and did reasonably draw the inference that they were responsible for the false market values reported. This inference is also supported by the fact that they, and they alone, knew of the critical condition of the trust company; that it was to their personal advantage to keep the trust company open; that they were the ones who would and did profit mostly by the continued operation of the trust company by way of dividends, bonuses, salaries and the like.

In this posture of the proof we consider the pertinent rule to be this: When, pursuant to the provisions of section 16 of the Trust Company act (*Comp. Stat., p.* 5661), the commissioner of banking and insurance has called for a report of the condition of a trust company as of the close of business on a given day, the executive officers of the company are responsible for the truth of the statements contained in the report voluntarily signed, verified and attested by them, knowing what it was, although such report was prepared by another, unless they show that they were deceived without undue fault on their part; and uncontradicted evidence that the report was false and that they signed and delivered it without examining it, and in entire disregard as to whether it was true or false, justifies the finding by the jury of knowledge of falsity or willfulness and intention to deceive essential to sustain a conviction pursuant to section 17 of the act. *Pamph. L.* 1929, *p.* 699. See *State* v. *Twining,* 73 *N. J. L.* 3; *affirmed,* 73 *Id.* 683; *State* v. *Cutts* (*Supreme Court of Idaho*), 133 *Pac. Rep.* 115.

The defendants next argue that "the court erred in making remarks in the presence of the jurors which tended to discredit or prejudice the accused with the jury."

We think there was no prejudicial error in this respect.

The record discloses that in practically every instance complained of the defense invited the remarks and comments by the trial judge, and we believe that he was entirely justified in explaining his rulings and making reply to unsubstantial arguments and objections. No disputed facts whatsoever were taken from the jury's consideration. No binding instructions were given to the jury by the court.

Of course, it is always the right and often the duty of the trial judge to comment upon the evidence and to say how the testimony strikes his mind, and such comments, even though interrogative and argumentative in character, will not lead to a reversal so long as he is careful (as here) to avoid controlling the jury by binding instructions and instructs them that it is their right and duty to decide for themselves all disputed questions of fact. *State* v. *Fuersten,* 103 *N. J. L.*

383; *State* v. *Corrado,* 113 *Id.* 53; *State* v. *Hauptmann,* 115 *Id.* 412.

The defendants next argue that the court permitted evidence not germane to the issue and too remote therefrom, which was prejudicial to them.

Our examination of the record discloses that this is not so. Criticism is made of proof of the declaration of dividends, the opening of new accounts after the report was filed, the extraction of bonuses, the use by the defendants of fictitious names, the salaries of the defendants, and criticism of the company's affairs by the commissioner of banking and insurance.

We have carefully examined the record in view of these contentions. Since the statute and the indictment makes knowledge of falsity or willfulness and an intention to deceive vital elements of the crime, it was certainly competent to furnish necessary proof to establish these elements. To prove knowledge and an intention to deceive it was proper for the state to resort to circumstantial evidence, and where, as here, such elements are denied or disputed by the defendants, the state had the right to affect defendants' credibility by proper cross-examination and by proof of defendants' opportunities to know that the report which they signed was in fact false, and to show their motive and their interest in the trial.

The defendants complain that other crimes or banking irregularities were brought out at the trial; but that was merely incidental to the proof of the main issue; and the rule is that several offenses forming parts of a series of acts evincing a continuous state of mind in the defendants and culminating in the criminal act for which they were indicted, are admissible in evidence upon the trial of such indictment. *State* v. *Deliso,* 75 *N. J. L.* 808.

Our examination of the challenged proof discloses to our satisfaction that all of it was permissible, either for the purpose of showing motive, or willfulness or knowledge upon the part of the defendants, or an intention to deceive the commissioner in signing the false report, or for the purpose of affecting their credibility.

The defendants next argue that it was error for the trial judge to suspend the trial for the purpose of examining jurors as to their possible bias or prejudice.

We think not in the circumstances confronting the judge.

It appears that on the sixth day of the trial, and as the evidence was practically completed, one of the jurors informed the court in his chambers that an attempt had been made to bribe him. The court thereupon so advised counsel, and thereafter, in open court the judge announced his purpose to examine each juror to inquire whether or not any member of the jury had been approached for the purpose of influencing his verdict, and to find out whether or not the jurors had been in anywise prejudiced and were in a position to truly decide the case upon the evidence, and that alone. To this procedure defendants objected. The court then proceeded, in open court, to examine each juror under oath (permitting counsel to participate in such examination). Three of the jurors declared that an attempt had been made to influence them by some unidentified person. The other nine swore that they had not been approached in any way. All twelve, however, testified under oath that they were still capable of rendering a true verdict, conscientiously, and in accordance with the evidence, and that they were entirely without prejudice. Each of them swore that irrespective of the fact that they had been thus placed upon the witness stand and examined under oath, they could still decide the case honestly and conscientiously and only on the evidence produced at the trial, without prejudice toward the state and without prejudice towards the defendants.

Now it is clearly the right of the trial judge to suspend a trial of a criminal case for the purpose of examining jurors as to possible bias or prejudice resulting from an alleged attempt by an unidentified person to bribe one or more of the jurors. *State* v. *Cucuel,* 31 *N. J. L.* 249; *Titus* v. *State,* 49 *Id.* 36; *State* v. *Unger,* 93 *Id.* 50.

At the conclusion of such investigation the trial judge found and announced, and we think properly, that the minds of the jurors had in no way been prejudiced. But nevertheless the defendants moved for a mistrial.

We think that the judge properly denied such motion.

It is well settled that the direction of a mistrial in a criminal case rests in the sound discretion of the trial judge, and is to be exercised only in extraordinary and striking circumstances in order to prevent a failure of justice. Since it rests in discretion, a strict bill of exceptions will not lie to its refusal, nor can it be availed of under section 136 of our Criminal Procedure act (*Comp. Stat., p.* 1863), unless its refusal resulted in manifest wrong or injury. The latest case so holding to which our attention has been called is *State v. Bleefield,* 115 *N. J. L.* 76; *affirmed,* 115 *Id.* 559. See, also, *State* v. *Unger,* 93 *Id.* 60; *State* v. *Lewis,* 83 *Id.* 161; *affirmed,* 84 *Id.* 417; *Klose* v. *United States,* 49 *Fed. Rep.* (*2d*) 177; *certiorari* denied, 52 *U. S. Sup. Ct. Rep.* (October term, 1931) 11; *Commonwealth* v. *Tilly,* 33 *Pa. Superior Court* 35; *Commonwealth* v. *Deutsch,* 72 *Id.* 298; *State* v. *Bersch* (*Mo.*), 207 *S. W. Rep.* 809. In our own case of *State* v. *Lewis, supra,* and in the cited cases in other jurisdictions, it was properly pointed out that if such were not the rule "the most unreasonable consequences would follow."

Here, certainly, there was no manifest wrong or injury.

Lastly, it is contended that "the trial judge erroneously and improperly charged the jury on the facts and law involved in the trial under this indictment, and that this constituted harmful and reversible error."

We think there is no merit in this argument.

We have examined with care the criticisms leveled at the charge. The only criticism respecting the law which needs attention had already been fully considered herein and found to be without merit. The criticisms respecting the charge "on the facts" we believe are unsubstantial. In determining upon the accuracy of an instruction to the jury, it is not permissible to extract a single sentence and construe it without regard to the context in which it appears. The entire charge must be read and construed as a whole in order to determine whether there was error prejudicial to the defendants. *State* v. *Banusik,* 84 *N. J. L.* 640. So considered we think there was no prejudicial error.

The judgment below will be affirmed.