# THE STATE v. D. K. GREER, Appellant.

## Division Two, June 1, 1912.

1. **ARSON: Intent to Defraud Insurance Company: Knowledge.**
   Intent to defraud an insurance company is the very essence of the crime of setting fire to a building with the intent to defraud the insurance company by which the building and its contents were insured; and there can be no such intent unless defendant knew the property was insured.  In order to convict the defendant of that crime it is necessary to prove he had knowledge that the property was insured; and in this case the evidence totally fails to show such knowledge.

2. ————: ————: ————: **Another's Property: Insufficient Evidence.**  Under the statute if the building is not insured and the owner burns it, or if a defendant, who has no interest either in the building or its contents, assists the owner to burn it, no crime is committed, for the burning of uninsured property becomes a crime only when done by some one other than the

owner. Such burning becomes a crime only because of an intent to defraud the insurer. And though the building and its contents be insured and the defendant had a desk (which was not insured) in the building, and was present in the building with the owner when the fire started, yet if there is no evidence that defendant knew the property was insured, a conviction cannot stand, because the essence of the crime, the intent, cannot exist without that knowledge.

Appeal from Moniteau Circuit Court.—*Hon. J. M. Williams,* Judge.

REVERSED AND REMANDED.

*W. F. Quigley* and *Jeffries & Corum* for appellant.

(1) The demurrer ought to have been sustained. There was no evidence that Steinkraus ever applied for a policy of insurance on his building; no evidence that he paid the premium on said policy; no evidence of the delivery of said policy to him; and no evidence that he knew of the issuance of any such policy, if one were issued. The charge in the indictment was, "which said building was at the time of setting fire to and burning insured against loss or damage by fire, with intent then and there the insurer, the Niagara Fire Insurance Company, a corporation, unlawfully, wilfully, maliciously and feloniously to defraud and prejudice." There was absolutely no proof on this proposition, and, therefore, no proof of the offense charged in the indictment. (2) The information charged that the Niagara Fire Insurance Company was a corporation. This was essential. State v. Jones, 168 Mo. 402; State v. Horned, 178 Mo. 61; State v. Clark, 223 Mo. 50; Steeden v. People. 82 Ill. 452; People v. Schwarz, 32 Cal. 160. The allegation having been made that the Niagara Fire Insurance Company was a corporation, and such allegation being essential, it then devolved upon the State to offer some proof of the *de facto* existence of

that company as a corporation. No such proof was offered. But such proof was absolutely essential to sustain the charge of the information. State v. Horned, 178 Mo. 61; State v. Clark, 223 Mo. 50; Rhode Island v. Murphy, 16 L. R. A. 550; State v. Ahsam, 41 Cal. 645; R. S. 1909, sec. 5238. There was no evidence tending, directly or indirectly, to show that this defendant had any reason to believe that the building was insured by the Niagara Fire Insurance Company or any other company. It was incumbent on the State to show by some fact or circumstance that he had such knowledge. The State failed to do this, and defendant should have been acquitted. Martin v. State, 28 Ala. 82. (3) The trial court permitted four witnesses to testify on behalf of the State that they saw the defendant after the explosion and that he made no declaration to them concerning it. These witnesses did not charge the defendant with the commission of any crime. No person made such an accusation against him in the presence of the witnesses. The defendant was not called upon to speak, and yet his silence was permitted to go to the jury as evidence of a confession of guilt. (4) Instruction 4, based on the first count of the information, purported to cover the whole case and authorized the jury, on a finding of the facts therein submitted, to pronounce the defendant guilty. The averment in the information that the Niagara Fire Insurance Company was a corporation was essential. Proof thereof was also essential, and there should have been a call on the jury in this instruction to find that it was a corporation. In this instruction the court attempted to define the offense charged against the defendant and tell the jury the essential facts necessary to be found to authorize a conviction. An essential element, to-wit, the existence of the insurance company as a corporation, was omitted. This constituted reversible error. State v. Silver, 130 Mo. 440; State v. Pratt, 98 Mo. 482; State

v. McCaskey, 104 Mo. 648; State v. Graves, 185 Mo. 713; State v. Smith, 174 Mo. 586. (5) There was no fact or circumstance presented in the case that tended to show a conspiracy, and it was error for the court to give instructions touching that subject, for the reason there was no evidence on which to base such instructions. (6) It devolved on the State to show that the defendant had knowledge of the existence of the insurance. Unless it gave proof of some fact or circumstances tending to show this knowledge on the part of the defendant, how could it be said that he intended to defraud? Knowledge on his part of the insurance was a prerequisite. Under no condition could he have entertained an intent to defraud the company, unless he had knowledge that the burning of the building would operate as a fraud on the company. Martin v. State, 28 Ala. 82.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Instruction 4 follows the language of the statute, defines the offense and also prescribes the punishment found in the statute. Secs. 4511 and 4513, R. S. 1909. (2) Appellant asserts that the demurrer should have been sustained, because appellant did not know that the building, exploded and fired, was insured. In this appellant was in error. Sec. 4898, R. S. 1909, provides that any person who shall be an accessory to any felony before the fact shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be tried, convicted and punished in the same manner as the principal in the first degree. State v. Schuchmann, 133 Mo. 111; State v. Orrick, 106 Mo. 111; State v. Sykes, 191 Mo. 62. Sec. 4900, R. S. 1909, provides that an accessory before or after the fact may be indicted, tried and punished, even when the principal felon may not have been arrested, tried and

convicted. State v. Casey, 207 Mo. 1. (3) Appellant asserts that there was no proof that the Niagara Fire Insurance Company was a corporation. Sec. 5238, R. S. 1909, provides that when the existence of a corporation becomes material, or in any way drawn in question in a criminal case, the fact of corporation may be proven by general reputation. Parol proof of that fact was ample in this case. The cases cited by appellant do not bear out his contention. The cases there cited deal, altogether, with a different proposition, that is, when an indictment or information charges a crime committed against a corporation, such indictment or information must state that the same was a corporation, or, if charged against a partnership or company, it must state the names of the parties composing the partnership or company. Appellant fails to cite an authority bearing out his contention under this point. State v. Knowles, 185 Mo. 141; State v. Jackson, 90 Mo. 156; State v. Tucker, 84 Mo. 23. A corporation created under the general law of another State falls within this section. State v. Fitzsimmon, 30 Mo. 236. He who advises or encourages another to do an illegal act is responsible for all the natural and probable consequences that may arise from its perpetration. State v. Darling, 216 Mo. 450; State v. Bobbitt, 215 Mo. 10. (4) Proof that the accused held a policy of insurance on the building, or the goods therein, at the time of the fire, or, who acted for one who had such a policy, is admissible. Roberts v. State, 7 Cold. (Tenn.) 359; People v. Scott, 37 Pac. 325; People v. Fournier, 47 Pac. 1014; Commonwealth v. McCarthy, 119 Mass. 354; 1 Ency. of Ev., 986; 2 Am. & Eng. Ency. Law (2 Ed.), p. 7941.

BROWN, P. J.—Convicted of arson with intent to defraud an insurance company, defendant appeals from a judgment of the circuit court of Moniteau county

fixing his punishment for said crime at imprisonment for twelve months.

Defendant resided at Tipton in Moniteau county, and was engaged in buying junk, fur and hides as agent for another party. He kept his desk in a small one-story wooden building owned by one Gus Steinkraus at Tipton. Said building was used by Steinkraus as a shoe shop and shoe store.

Defendant and Steinkraus were intimate friends, and the latter kept defendant's books. Defendant appears to have been too illiterate to keep them himself. They resided in houses near each other in another part of town. They were jointly indicted, but separately tried, and each convicted.

The evidence tends to prove that Steinkraus had the building in which his shop was located, insured for $300, and his stock of goods and fixtures for $600; and that the building and goods were worth as much as they were insured for.

On March 23, 1910, the families of both defendant and Steinkraus were away from home. On that day they each purchased two gallons of gasoline, defendant ordering his purchase sent to his residence, while Steinkraus took his to his shoe shop.

The defendant kept a gasoline stove at his residence, and the can of gasoline purchased by him was seen there on the day following the fire by several witnesses. The merchants who sold the gasoline to defendant and Steinkraus, testified that they were regular purchasers of gasoline, buying about two gallons each per week.

On the night of March 23, 1910, defendant and Steinkraus were seen walking together about Tipton until a late hour, and appeared to be drinking heavily. Defendant claimed to be waiting to meet his wife, whom he expected home on a night train.

About the hour of 3:30 a. m., March 24, 1910, they were at Steinkraus's shop, and while there, an explosion occurred, and the building was set on fire. The

fire was almost immediately extinguished by citizens of the town by the use of a few buckets of water.

The evidence clearly shows that both defendant and Steinkraus left the shop immediately after the building began burning, and neither of them returned to assist in extinguishing the fire. One man was seen running from the building immediately after the explosion occurred, but the evidence does not show whether this was defendant or Steinkraus.

Defendant's version of the matter is that about 3:30 a. m., he and Steinkraus went to the shop to get some whiskey which had been left there; that after taking a drink of the whiskey, defendant went out at the back door to answer a call of nature; and in doing so, upset a jug of gasoline sitting on the floor; that after he returned and while he was standing in the back door, Steinkraus struck a match to light his pipe, and when he threw the match to the floor, the explosion occurred, blowing defendant out the door, and also blowing the door shut with such force as to amputate one of his fingers which was caught between the door and the facing thereof.

Defendant's statement is in a measure corroborated by the finding of his amputated finger inside the shop, and his hat just outside, after the fire was extinguished. Some sacks and papers saturated with coal oil or gasoline were found inside the building. A jug one-third full of coal oil, and a can two-thirds full of gasoline were also found there after the fire.

To a doctor who treated defendant a few hours later, he stated that he tore his finger off in a door; while to another witness who called on him near the same time, he said he fell down and tore his finger off.

While the evidence discloses a strong friendship and close intimacy between defendant and Steinkraus, the record is barren of anything tending to prove that defendant had knowledge that either the shoe shop or

the contents thereof were insured. The defendant testified positively that he had no knowledge that the property was insured.

## OPINION.

Defendant attacks the judgment on many grounds, but we find it only necessary to consider one—the sufficiency of the evidence to support the verdict.

While the evidence shows that defendant was present when the Steinkraus building was purposely or negligently set on fire, we have examined and re-examined the record without finding one word to indicate knowledge on the part of defendant that the building or its contents were insured.

Defendant had no interest whatever in either the building or its contents; and consequently there was no call for Steinkraus or anyone else to inform him about the insurance.

The acts of Steinkraus in keeping the defendant's books would give the former an intimate knowledge of defendant's business, but would not tend to inform defendant of Steinkraus's business transactions. Defendant was travelling part of the time.

- Intent to defraud an insurance company is the very essence of the crime of which defendant was convicted. No such intent could exist without knowledge that the property was insured.

Ordinarily when one purposely or designedly performs an unlawful act, the law presumes that he intends the natural or usual consequences of such act. If in attempting to commit one crime he commit another, the law will carry or transmit the unlawful motive from the act intended to the act committed. [1 Wharton's Criminal Law (2 Ed.), sec. 320.]

However, that rule does not apply in this case. Under sections 4509, 4511 and 4512, Revised Statutes 1909, if the shoe shop and contents had not been in-

sured and Steinkraus had burned them, or if defendant had assisted him in that act, no crime would have thereby been committed; for the reason that the burning of uninsured property of that character only becomes a crime when done by someone other than the owner. [Wharton's Criminal Law (2 Ed.), secs. 841 and 843.]

However reprehensible it might have been for Steinkraus to burn his own property, or for another to assist him in that act, it only became a crime because of the intent to injure the insurer of the property; consequently, to convict defendant it was necessary to prove that he had knowledge that the property was insured. [Martin v. State, 28 Ala. 71; Kelley's Criminal Law (2 Ed.), sec. 604; State v. Hickam, 95 Mo. 323; People v. Kelly, 42 N. Y. Supp. l. c. 759.]

For failure of the state to prove that defendant knew that the Steinkraus property was insured, the judgment of the trial court is reversed and the cause remanded.

*Kennish* and *Ferriss, JJ.,* concur.