THE STATE v. ELMER SCHNEIDER, Appellant.—29 S. W. (2d) 698.

Division Two, June 11, 1930.

*John E. Bowcock* for appellant.

*Stratton Shartel*, Attorney-General, and *Henry Depping*, Assistant Attorney-General, for respondent.

HENWOOD, C.—By an information filed in the Circuit Court of the City of St. Louis, the defendant, one Joseph Buschman and one Edward Taylor were jointly charged with the crime of robbery in the first degree, as defined by Section 3307, Revised Statutes 1919. It is alleged in the information that the defendant has been previously convicted of three felonies, and that Buschman and Taylor have been previously convicted of one felony, thereby bringing the case within the provisions of Section 3702, Revised Statutes 1919, known as the Habitual Criminal Act. A severance having been granted, the defendant was tried alone, found guilty "of robbery in the first degree and one prior conviction as charged in the information" and sentenced to imprisonment in the penitentiary "for his natural life," in accordance with the verdict, and, in due course, appealed.

The following statement of the evidence (allowing for alterations) is taken from the brief of the Attorney-General:

"The robbery occurred on Saturday, August 13, 1927, in the office of the Nicklin Tannery Company, a corporation in St. Louis, at 409 South Second Street. William G. Nicklin, president of the company, testified: On the morning of August 13, 1927, about 11:30 o'clock, he went to his bank, and returned to his office about 12:30, with the money for his weekly pay-roll. He entered his office, which was in the front part of the building and separated from the building proper by a partition of glass and wood. He was seated on a stool, putting the money in envelopes, when a man covered him with a gun and said: 'Give us that dough.' He dropped to the floor, and, when he looked up, four men were covering him with guns. There might have been five men, but he was not sure. They took three hundred dollars and seventy-five cents of the pay-roll money and fifty dollars from his pocket. They tied his ankles and departed. He did not identify the defendant as one of the robbers, but did identify Joseph Buschman as one of them.

"O'Dell Slattery was a witness at the preliminary hearing of the defendant, Buschman and Taylor, but died before the defendant's trial. His testimony, taken down in shorthand at the preliminary hearing, was read to the jury at the defendant's trial. He testified: He worked as 'pony' boy for one John Berne in a blacksmith shop at the rear of the Nicklin Tannery Company. He was a colored boy, about eighteen years of age. He knew the defendant, Buschman and Taylor, because he had seen them around the blacksmith shop several times. On the morning of August 13, 1927, all of them came to the blacksmith shop and waited from about 9:30 A. M. until 12:15 P. M. They all got guns from some drawers in the

blacksmith shop. He next saw them run into the blackshmith shop, from Nicklin's place, with a sack. Taylor sat in an automobile while the others went inside. All departed in the automobile.

"John Berne testified: He operated the blacksmith shop at the rear of the Nicklin Tannery Company. O'Dell Slattery was employed by him at the time of the robbery. He knew the defendant, Buschman and Taylor. About a week before the robbery, he heard them and two other men, known to him as Happy Haulihan and Joe Troop, planning the robbery. They gave him guns to keep for them, and arranged with him to bring the guns to the shop. On the day of the robbery, they came to his shop and waited there until Nicklin returned from the bank. He gave them their guns, and, later, the defendant, Buschman, Troop and Haulihan came running back from Nicklin's to their automobile, and departed. He thought Haulihan was driving the car. He went home that afternoon about 1:45 and saw these men at his home. Buschman handed him a handerchief containing about thirty or thirty-five dollars, for keeping the guns for them. The defendant and Buschman said that the robbery was a push-over all right, but that they didn't get what they expected. He took their guns and put them away in a chifferobe at his house. They told him to bring the guns to Schneider's (the defendant's) apartment that night, for the purpose of pulling off another job. The defendant and Buschman then departed in a red-top taxicab. They were arrested later that afternoon, shortly after getting out of a red-top taxicab.

"Records of the Circuit Court of the City of St. Louis, together with commitments, were introduced showing that the defendant had previously been convicted of the crimes of assault to kill, grand larceny and robbery in the first degree. Claude Lewis, an officer of the St. Louis Police Department, testified that he had been employed at the Missouri State Penitentiary in the identification bureau, and that he saw the defendant at the penitentiary from the first part of 1922 until September 1, 1926, when he left the service of the penitentiary. The records of the State Penitentiary were introduced showing that the defendant was received at the State Penitentiary February 25, 1921, from the city of St. Louis, under a sentence of ten years, charged with assault to kill, grand larceny and robbery in the first degree.

"The defendant denied participation in the crime charged. His defense is an alibi."

Other evidence will be hereinafter noted.

I. The information has been upheld in the companion cases of State v. Taylor, 18 S. W. (2d) 474, and State v. Buschman, 29

S. W. (2d) 688. In the Taylor case, at page 478, BLAIR, P. J., said: "The information properly charged appellant and his codefendants with robbery in the first degree, after alleging the prior conviction of each defendant, so as properly to invoke the provisions of said Section 3702 as to punishment." It will suffice to say that there is no merit in the defendant's challenge of the information.

II. It is urged that the trial court erred in giving the State's Instruction 3, which authorized the jury to find that the defendant complied with sentences based upon prior convictions, and, "after his discharge from the penitentiary, upon compliance with said sentences, committed the crime of robbery in the first degree, as charged in the present information." In other words, it is urged that the State failed to prove that the defendant was discharged from the penitentiary prior to August 13, 1927, the day of the alleged robbery, and that there is no evidence to support the finding of the jury in that particular.

The evidence shows that, on February 8, 1921, the defendant pleaded guilty to charges of assault with intent to kill, grand larceny and robbery in the first degree, in the Circuit Court of the City of St. Louis, and was sentenced to imprisonment in the penitentiary for three consecutive terms aggregating ten years; that, on February 25, 1921, he was delivered to the warden of the penitentiary, as a prisoner, in accordance with said sentences; that, on September 1, 1926, he was still confined as a prisoner in the penitentiary; and that, from sometime in June, 1927, until August 13, 1927, the day of the alleged robbery, he lived in the home of his father in the city of St. Louis, and, during said period, was frequently seen in Berne's blacksmith shop and other public places in the city of St. Louis. The State's Exhibit B, a certified copy of the record of the defendant's imprisonment in the penitentiary, reads as follows:

"State's Exhibit B.

"Missouri State Penitentiary. Description of convict. Register No. 23485. Name, Elmer Schneider. Age, 19. Nativity, Missouri. Trade, teamster. Height, 5 feet 9 inches. Length of foot, 10 inches. Color of hair, lt. ch. Color of eyes, blue. Complexion, fair. Education, yes. Former imprisonment, none. Weight when received, 165. Father, Jos. Schneider, St. Louis, Missouri. Crime, P. G., assault to kill, grand larceny, robbery first degree, St. Louis City. Sentence, 10 years from February 8, 1921. Term of court, February, 1921. When received, February 25, 1921. SS. I, Leslie Rudolph, Warden of Missouri State Penitentiary, do hereby certify the foregoing to be a true and correct copy of the record of Elmer

Schneider, No. 23485, as shown by the books in the Warden's office at the Missouri State Penitentiary.

". . . . . . . . . . . . . . . . . . . . . "(Signed) LESLIE RUDOLPH.

"Subscribed and sworn to before me, a notary public, within and for said county and state, this 28th day of November, 1927.

"My commission expires October 10, 1931.

"(Signed) Marguerite E. Phelan."

Section 3702, Revised Statutes 1919, provides that: "If any person convicted of any offense punishable by imprisonment in the penitentiary . . . . . . shall be *discharged*, either upon pardon or upon compliance with the sentence, and shall *subsequently* be convicted of any offense committed *after* such pardon or discharge, he shall be punished," etc. (Our italics.)

Referring to this statute, in State v. Manicke, 139 Mo. l. c. 548, 41 S. W. l. c. 224, BURGESS, J., said: "The indictment was drawn under this section, and its averments are in accordance therewith. It alleges the former conviction of defendant, his compliance therewith and his discharge from prison. These were necessary allegations, and *without proof* of them no conviction could have been had under that section. It was just as necessary to sustain them by *proof* as to allege them, in the *absence* of which the judgment of conviction could not be permitted to stand."

In the recent case of State v. Dalton, 23 S. W. (2d) l. c. 5, DAVIS, C., discussed the same subject in the following manner: "It was necessary, under Section 3702, Revised Statutes 1919, to aver in the information the conviction of defendant and his discharge from the penitentiary, either by pardon or compliance with the sentence. . . . . As it was necessary to allege these things, it was necessary to *prove* them, and necessary for the jury to *find* them. The former conviction and *discharge* of defendant were facts to be passed upon by the jury, as much so as the facts of the crime of transportation (of moonshine whisky) for which defendant was prosecuted."

See, also, State v. Austin, 113 Mo. 538, 21 S. W. 31, and State v. Moore, 121 Mo. 514, 26 S. W. 345.

While it is alleged in the information that the defendant was "duly discharged from the penitentiary upon lawful compliance with said sentence, on October 22, 1926," etc., the evidence fails to show *how* or *when* he got out of the penitentiary. True, the evidence does show that the defendant had been living in the city of St. Louis for about two months prior to the day of the alleged robbery. But, the jury were left in the realm of speculation and conjecture as to whether he had been lawfully discharged from the penitentiary, or whether he had escaped from the penitentiary, or whether he had been released from the penitentiary under the terms of a parole or by virtue of some judicial proceeding.

Therefore, we are compelled to hold that there is no substantial evidence to support the finding that the defendant was lawfully discharged from the penitentiary, and that the trial court erred in giving the State's Instruction 3, which authorized the jury to so find. If the defendant was lawfully discharged from the penitentiary on October 22, 1926, as alleged in the information, the State should have no difficulty in establishing that fact at another trial of this case.

This disposes of all questions presented for our consideration. For the reasons above mentioned, the judgment is reversed and the cause remanded. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.