STATE of Missouri, Respondent,

v.

Edward John REAGAN, Appellant.

No. 47521.

Supreme Court of Missouri,
Division No. 1.

Oct. 12, 1959.

Leonard Swade, Carl E. Laurent, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., for respondent.

HYDE, Presiding Judge.

Defendant was convicted of stealing property of the value of more than $50 (Secs. 560.156; 560.161) and under the habitual criminal statutes and sentenced to ten years in the penitentiary. (556.280 and 556.290; all statutory references are to RSMo and V.A.M.S.) Defendant has appealed and assigns error in refusing his motion for directed verdict, in connection with which it is claimed that evidence was used which was obtained by illegal search and seizure.

Evidence was heard on a motion to suppress, which was overruled. The evidence on this issue was substantially the same as the testimony at the trial. The following facts were shown by the State's evidence. On September 12, 1958, Detective Sergeant Dowd (not in uniform) was driving west on Ninth Street in Kansas City when a panel truck, owned by defendant and driven by M. J. Pettit, crowded his car over the curb at Ninth and Benton. He followed the truck to Ninth and Prospect, where it stopped at a filling station. When Pettit got out of the truck, Dowd got out of his car and asked Pettit "why he drove like that"; and, when Pettit paid no attention to him, he told him he was under arrest. Dowd

checked Pettit's driver's license and then went over to the truck on the driver's side and saw defendant sitting in the center of the driver's seat. The truck had windows on each side of the front at the driver's seat and there was no partition behind the seat. Dowd could see in through the driver's window and "saw a large propeller, which appeared to be a motor propeller, sticking out from under a rug, * * * back probably a foot and a half [behind the driver's seat]." He stated he then had the following conversation with defendant: "I said, 'What do you have there under the rug?' He said, 'An old outboard motor.' I said, 'What are you going to do with it?' He said, 'Sell it.' I said 'How much do you want for it?' He said, '$50.00.' I said, 'Do you mind if I look at it?' He said, 'No.'" Dowd went to the rear of the truck, opened the back doors and pulled the rug off the motor. He said: "I looked at it. It had a tag on it, a tag with directions, and appeared to be a brand new motor, maroon and white, 35 horsepower Elgin. He told me it was an old motor he was going to sell for $50.00, and it looked like it was worth about $400.00 or $500.00." Defendant was then arrested and taken to the police station. Defendant said it was his truck and he would take full responsibility so Pettit was released.

E. N. Russell identified the motor by brand, size and serial number, as one he had bought about a week before for $475. He said that he had locked it in his station wagon, parked in front of his apartment, on the night of September 11, 1958, intending to take it on a week-end trip the next day. He saw it there at 8:00 P.M. and the next morning at 6:15 A.M. it was gone. The window vent on the right-hand front door of his car was broken and the door was unlocked. The motor was new and had never been used; Russell had taken it out of its crate that night to put it in his car.

Defendant testified that he was playing cards all night (September 11-12, 1958) with two men who so testified. Defendant said he got the motor from a man named Roy Williams, who wanted to sell it to him and who offered to give him a commission of $20 if he could sell it for $100. Defendant said he found a man who was interested, on the afternoon of September 12th, and wanted to see the motor. Defendant said he got the motor from Williams in an alley about a quarter of a block beyond Ninth and Prospect just a few minutes before he was arrested. Defendant said he asked Pettit to drive his truck because Pettit had a driver's license and he did not. It was not explained what had become of Williams.

At the hearing on the motion to suppress, defendant and Pettit testified that Dowd found the motor by opening the back doors of the panel truck and removing the rug, which defendant claimed completely covered the entire motor including the propeller. However, Pettit did admit that "it is possible to see all throughout the truck standing outside looking in the window" at the driver's seat; and Dowd's testimony was that he saw the propellor of the motor, right behind the front seat, not covered by the rug, while standing by the driver's seat. As we said of a similar situation in State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 692: "Under these facts defendant's contention as to unlawful and unreasonable search and seizure cannot be sustained. Constitutional guaranties against unreasonable search and seizure apply where seizure is brought about by an unlawful search. Those guaranties are not infringed where the recovery and possession of property theretofore stolen is accomplished *without search* and where such property lies fully disclosed, open to the eye and in plain view. Where the evidence of an unlawful act is discovered by the officer without a search there is no violation of those constitutional guaranties. A search, within the constitutional provisions invoked, basically involves 'of necessity, a quest for, a looking for, or a seeking out of, that which offends against the law. It implies a prying into hidden places for that which is concealed.' Observation

of that which is open to view is not a search. A search (such as is prohibited by the constitutional provisions invoked) is not made by merely looking at that which can be seen." See also State v. Harris, Mo. App., 325 S.W.2d 352, 356, and cases cited. Furthermore, in this case, Dowd's testimony was he removed the rug only after defendant suggested selling the motor to him and after he had then asked for and received defendant's permission to open the rear doors and look at the motor. All this was after he had seen the propellor through the driver's window. Under these circumstances, as shown by the above cited cases, it is immaterial that Dowd did not arrest defendant until after he inspected the motor. See Searches and Seizures in Missouri, Scurlock, 20 Univ. of Kansas City Law Review 227, 275, 280. Cases cited by defendant, such as State v. Smith, 357 Mo. 467, 209 S.W.2d 138; State v. Cuezze, Mo. Sup., 249 S.W.2d 373, where the articles seized could not have been seen or found without a search are not in point. Moreover, the Smith case, 209 S.W.2d loc. cit. 140, holds that voluntary testimony at the trial concerning possession, such as was given by defendant herein, is a waiver of any right to complain that the motor was obtained by an unlawful search. See also 20 Univ. of Kansas City Law Review 287, and cases cited. We, therefore, hold that defendant's claim of unlawful search and seizure cannot be sustained and that this evidence was properly ruled admissible and received.

■ Defendant further contends there was no substantial evidence to connect him with the stealing of the motor. Defendant cites cases holding that mere constructive possession of property is insufficient (State v. Wyre, Mo.Sup., 87 S.W.2d 171, 173, and cases cited); and holding that to create an inference of guilt there must not only be exclusive possession but there must be other evidence to connect defendant with the offense. State v. Oliver, 355 Mo. 173, 195 S.W.2d 484; State v. Jordan, Mo.Sup., 235 S.W.2d 379; State v. O'Brien, Mo.Sup.,

252 S.W.2d 357. Defendant argues that it was only shown that he was a passenger in the truck when the motor was found in it. However, defendant overlooks the facts that he was the owner of the truck in which the motor was found; that the truck was being driven by Pettit at his request and according to his directions; and that he assumed full responsibility for the motor being in the truck and, in fact, exercised such dominion over it as to try to sell it. This showed exclusive possession under the rules established by the cases cited by defendant. Furthermore, as to other evidence, when Dowd saw only the propellor, defendant said it was an old motor and offered to sell it for $50, when actually it was a brand new motor that had never been used, with a tag containing directions for its use still on it, and worth at least eight times this amount. Of course, defendant denied some of this but its truth was for the jury and they found against him. "In determining the sufficiency of the evidence to sustain a conviction, we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom; and evidence to the contrary is rejected." State v. Woolsey, Mo., 328 S.W.2d 24.

■■ "In this state the law is well settled that while recent possession of stolen property is not proof of guilt as a matter of law, it is sufficient to submit the case to the jury." State v. Tomlinson, 352 Mo. 391, 177 S.W.2d 493, 494, and cases cited. The Tomlinson case, 177 S.W.2d loc. cit. 495, disapproved an indication to the contrary in State v. Duncan, 330 Mo. 656, 50 S.W.2d 1021. See also State v. Denison, 352 Mo. 572, 178 S.W.2d 449; State v. Harper, 353 Mo. 821, 184 S.W.2d 601; State v. Oliver, 355 Mo. 173, 195 S.W.2d 484; State v. Hite, Mo.Sup., 298 S.W.2d 411. As stated in State v. Denison, 178 S.W.2d loc. cit. 454, "if the facts are consistent with the defendant's innocence, neither he nor his witnesses need lie about them"; as the jury could find defendant did in stating he had an old motor of small

value in his truck. Our conclusions are that the jury could reasonably find that defendant had exclusive possession of the recently stolen motor (less than 24 hours after it had been stolen); that he concealed and misstated facts concerning it; and that he did not reasonably explain his possession of it. We therefore hold that the State made a submissible case and that the court properly overruled defendant's motion for a directed verdict.

■ Defendant also makes the following contentions concerning his conviction and sentence under the habitual criminal statutes, namely, that the verdict was insufficient because it failed to find that defendant had been convicted of a prior felony and discharged or pardoned therefrom prior to the commission of the crime for which he was tried; that the State did not prove defendant's prior convictions with properly certified copies of the judgments; that the manner of presentation of evidence of his former convictions by including releases, paroles and revocations was improper; and that admission of evidence of these convictions prior to the time the guilt of defendant was determined by the jury was unfair and unconstitutional. The verdict after finding defendant guilty of stealing stated, "and we further find the defendant has been convicted of four prior felonies and assess his punishment at ten years in the State Penitentiary." Defendant cites State v. Garrison, Mo.Sup., 305 S.W.2d 447; State v. Kelly, Mo.Sup., 258 S.W.2d 611; State v. Humphrey, 357 Mo. 824, 210 S.W.2d 1002; State v. Schneider, 325 Mo. 486, 29 S.W.2d 698; State v. Dalton, Mo.Sup., 23 S.W.2d 1. However, in State v. Kelly, cited by defendant, we held a verdict sufficient which only stated defendant's larceny was "second offense." We said, 258 S.W.2d loc. cit. 612: "The verdict should have contained a specific finding by the jury that defendant had been convicted of a prior felony as charged, rather than a finding of 'Second Offense.' State v. Humphrey, 357 Mo. 824, 828 [3], 210 S.W.2d 1002, 1005 [7–9]. However,

by reference to the information, the evidence of a prior felony conviction, and the instructions of the court, the meaning of the verdict is clear. Under these circumstances, it was sufficient in form and substance to sustain the judgment." Likewise, in State v. Hite, Mo.Sup., 298 S.W.2d 411, 413, we held sufficient a verdict which stated: "We further find the defendant has been formerly convicted of a felony." See also State v. Charles, Mo.Sup., 268 S.W.2d 830, 832. Reference to the information, evidence and instructions in this case makes the meaning of this verdict clear. Furthermore, there was really no such issue for the jury to determine in this case because defendant admitted the prior convictions both on direct and on cross-examination and stated that he had served some sentences. In State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077, 1082, we held an admission of prior conviction, punishment and discharge is conclusive on the defendant. See also State v. Marlin, Mo.Sup., 177 S.W.2d 485, 488; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327, 328, 330. We hold the verdict herein was sufficient.

■ Defendant's other contentions, concerning the method and manner of showing his prior convictions, are immaterial in view of defendant's admissions concerning these convictions, especially since the documents in evidence did show that defendant had served the sentences imposed and been discharged. See State v. Dalton, supra, 23 S.W.2d loc. cit. 5. Furthermore, the only mention of these matters in defendant's motion for new trial is as follows: "5. The presentation of the evidence under the Habitual Criminal Act and the manner in which it was presented was prejudicial, illegal, and unconstitutional." This is not a statement of specific grounds "in detail and with particularity," required by Rule 27.20, 42 V.A.M.S., and therefore preserves nothing for appellate review. Furthermore, it is well settled that evidence of prior convictions, when a defendant is charged under the habitual criminal statutes, is properly admissible at the trial and does

not violate any constitutional rights of defendant. State v. Nolan, Mo.Sup., 316 S. W.2d 630, 634, and cases cited. However, we call attention to the fact that procedure for sentencing under the statute was changed at the last session of the General Assembly. See 1959 amendment to Sec. 556.280 by S.B. 117. We have examined the record as required by Rule 28.02 and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.