STATE of Missouri, Plaintiff-Respondent,

v.

Solomon COHN, Defendant-Appellant.

No. 48240.

Supreme Court of Missouri,

Division No. 1.

June 12, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied July 10, 1961.

Walter A. Raymond, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Frank P. Motherway, Sp. Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant convicted of arson of insured property and sentenced to two years' imprisonment. Sec. 560.030 RSMo 1949, V.A. M.S. Defendant alleges error in refusing to direct a verdict for acquittal claiming total failure of proof because his insurance policy stated it covered property located at 341 Blue Ridge Boulevard in Raytown while the evidence showed the fire occurred at 10008 East 63rd Street, Raytown.

The indictment charged that defendant "did wilfully and feloniously and with the intent to injure and defraud the insurer, to-wit: the Mill Owners Mutual Fire Insurance Company, an Iowa corporation, set fire to and burn and cause to be burned certain goods, wares, merchandise and other chattels and personal property which then and there were insured by the said Mill Owners Mutual Fire Insurance Company, a corporation, against loss or damage by fire." Sec. 560.030 makes it a felony "wilfully and with the intent to injure or defraud the insurer set fire to, burn or cause to be burned any goods, wares, merchandise or other chattels or personal property of any kind which shall at the time be insured."

Defendant's $16,000 insurance policy, in evidence, was issued to Forrest Schoeller and James Benner d/b/a Raytown Market "on contents usual to a grocery store in the approved roof fire resistant building, at No. 341 Blue Ridge Blvd., Raytown, Missouri." The agent of the insurance company testified that when defendant Cohn bought the store "the insurance was just about half run its course, a three year policy, and the balance of the premium was then paid by Mr. Cohn to take it over." He also said that defendant agreed to a transfer of this policy and it was shown that an assignment was attached signed by Schoeller and Benner, consented to by the insurance company, to "Sol Cohn d/b/a Raytown Market, 7316 Harrison, Kansas City, Missouri." (This was defendant's residence address.) When the policy was received in evidence and the prosecutor, Mr. Granoff, started to read from it to the jury, defendant's counsel, Mr. Costello, stated: "We will agree that it was covered by the policy at the time of the fire, if that is what he wants to prove."

The following further statements were then made out of the hearing of the jury.

"Mr. Granoff: Can we agree, Mr. Costello, that this policy insured the contents of the store—can we agree that the contents of the policy shows that the contents of the store were insured for $16,000 with the Mutual—with the Mill Owners Mutual Fire Insurance Company, and that the face value of the policy was $16,000 and that the policy was in force and effect at the time of the fire?

"Mr. Costello: I didn't look at the face of the policy, is that the amount? Mr. Granoff: Yes.

"Mr. Costello: I think we can agree to that. We will agree to that. The Court: Fine.

"Mr. Granoff: May I make that statement to the jury, then? The Court: Yes.

"(Whereupon, the following proceedings were had and entered of record In The Presence And Hearing Of The Jury:)

"Mr. Granoff: Ladies and gentlemen, the attorneys for the defendant and I have agreed that this policy which you have heard described which has been received in evidence shows that Mr. Cohn's store was insured for $16,000, contents insurance against fire—a fire loss, with the Mill Owners Mutual Insurance Company of Des Moines, Iowa, and that this policy of insurance was in full force and effect on the date of the fire, February 19, 1956."

Defendant says two essential requirements of a conviction under Sec. 560.030 are (1) that the property is insured and (2) an intent to injure and defraud the insurer. Any reasonable construction of the above agreement between the parties would seem to eliminate the issue of insured property. However, defendant contends the State had to show the insurer was liable on the policy and had no defense against it. Certainly, in view of the policy assignment shown and agreed to, this does not appear as a matter of law. Defendant cites State v. Greer, 243 Mo. 599, 147 S.W. 968, (in which there was no evidence to show that defendant therein knew the property burned was insured) and State v. Librach, Mo.Sup., 270 S.W. 284, (in which there was no evidence that the property burned was insured). In this case, there was an insurance policy covering the contents of the Raytown Market which was assigned to defendant, with the consent of the company, when he bought the market. There was no evidence that defendant moved the insured goods thereafter and, no doubt, defendant's trial counsel had good reason to make the stipulation as to insurance since there had been a previous trial in this case. Nevertheless, defendant attempts to reason from the above-cited cases that if the insurance company in this case had a defense to a claim on that policy (because the goods were not at the location where they were originally insured) then no case can be made against him.

It is not the law that the State must show the insurance company had no defense to the policy; but instead "the guilt or innocence of the accused does not depend on the validity of the policy." 4 Am.Jur. 113, Arson, Sec. 65; 6 C.J.S. Arson § 2, p. 720; Annotation, 17 A.L.R. 1182. In State v. Steinkraus, 244 Mo. 152, 148 S.W. 877, 879, (a companion case to State v. Greer, supra) it is said: "The belief of defendant that his property was legally insured, and his intent to defraud the person or corporation which issued the policy thereon, makes out the crime of arson in the third degree. It is immaterial whether or not the act of burning does in fact defraud anyone." In the earlier case of State v. Tucker, 84 Mo. 23, 25, this court said: "It is the felonious intent to defraud the insurer, which is the salient characteristic of the crime here charged; the validity or invalidity of the organization of the corporation and of the policy which it issues were merely collateral matters." Therefore, in view of the policy assignment shown and the positive admission, agreement and stipulation that the contents of defendant's Raytown market were insured against fire by the company named, we hold that the court properly refused to direct a verdict of acquittal.

Defendant's allegations of error as to Instructions 2 and 8 are ruled by what we have said concerning direction of a verdict. Defendant's claim is that is was error to submit that his goods located at 10008 East 63rd Street in Raytown were insured by the Mill Owners Mutual Fire Insurance Company when the policy showed coverage of goods at 341 Blue Ridge Boulevard. Since the policy was assigned and defendant stipulated that the goods were insured at the time of the fire, we hold these instructions were proper.

Defendant's remaining claim of error is denial of his motion to suppress evidence and admitting in evidence objects taken after the fire from the premises, oral testimony of conditions observed and photographs taken therein. The evidence sought to be suppressed was described in the motion to suppress as photographs made on the day of the fire after the fire was extinguished

and the building closed and "matches, burned matches, match heads, match sticks, one 'hot plate' and connecting wire, certain materials and debris allegedly containing gasoline" removed from the building the next day and additional photographs taken on that day.

The evidence herein on the motion to suppress and at the trial where objections to admission of such evidence were renewed showed the following situation. (No contention is made as to sufficiency of evidence to make a jury case.) Defendant visited the building leased for his store around Sunday noon (February 19, 1956) and an explosion occurred therein about 3:40 p. m., which was seen or heard by many people nearby. A police officer who heard it called the fire department. The front plate glass windows were blown out and firemen entered through these windows. The front and rear doors were securely locked and had to be pried open to get in more hose lines. The heat of the fire was intense and the fire chief in charge testified that in his opinion it was a petroleum fire. Fire and police officers said they smelled gasoline in the store. (Defendant testified that no gasoline was kept there.) There were other buildings on each side of defendant's store and the occupant of one of them smelled gasoline before the explosion. A sprinkler can (kept to water vegetables) found by a fireman had a strong odor of gasoline. The fire was heaviest in the center of the store and charring was low, close to the ground. Fire and police officers stayed in the building that afternoon for about three hours, after the fire was extinguished, checking the cause of the fire and taking pictures. Debris gathered and tested in police laboratories was found to contain gasoline. In the meat department, at the rear of the store, there was a step ladder on the meat block and above the ladder there was a fuse box with which a timing device was connected set for 6:00 p. m. In front of the meat block, there was an electric hot plate with a cord spliced to make a length of over 19 feet, which would reach from the hot plate to the timing device. Under the hot plate, there were about 175 burned match sticks and six layers of charred paper. The officers had the gas company send a man to check for gas leaks but none were found. The windows were boarded up and police guards posted at the front and rear of the building for the night. The next morning, police officers went in the building again with officers from Kansas City and the State Patrol. More pictures were made and debris was taken for testing. Defendant came to the building Sunday evening after the fire but said he was not allowed to enter. Police officers said he was permitted to enter with them but not alone.

■ Defendant cites many cases, state and federal, involving officers entering a house or other premises, without a search warrant, or with an invalid warrant, seeking to find evidence against the owner or occupant, such as State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383; State v. Park, 322 Mo. 69, 16 S.W.2d 30; State v. Privitt, 327 Mo. 1194, 39 S.W.2d 755, 758(6); State v. Wright, 336 Mo. 135, 77 S.W.2d 459, 462(4, 5); State v. Wilkerson, 349 Mo. 205, 159 S.W.2d 794; Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 193, 93 L.Ed. 153; and Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. However, these are not cases of an original lawful entry as was true of the entry herein for the purpose of extinguishing the fire. "Firemen enter under a license given by law, primarily for the benefit of the public generally," and "their right to enter is independent of any permission of the possessor of the property, who has no right to exclude them." Anderson v. Cinnamon, Mo.Sup., 282 S.W.2d 445, 447. Use in a criminal case of evidence found by officers lawfully on the defendant's premises examining documents for another purpose by permission of the owner was held proper by the United States Supreme Court in Zap v.

United States, 328 U.S. 624, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477. The Court said: "The agents, therefore, were lawfully on the premises. They obtained by lawful means access to the documents. That much at least was granted by the contractual agreement for inspection. They were not trespassers. They did not obtain access by force, fraud, or trickery. Thus the knowledge they acquired concerning petitioner's conduct under the contract with the government was lawfully obtained. Neither the Fourth nor Fifth Amendment would preclude the agents from testifying at the trial concerning the facts about which they had lawfully obtained knowledge. * * * The search and the discovery were wholly lawful."

 Only "unreasonable searches and seizures" are within the constitutional prohibition. Art. 1, § 15, Const.V.A.M.S.; State v. Watson, 329 Mo. 158, 44 S.W.2d 132; State v. Egan, Mo.App., 272 S.W.2d 719. "All illegal searches and seizures are 'unreasonable' under the constitutional provisions, while lawful ones are reasonable." 79 C.J.S. Searches and Seizures § 8, p. 787. Being lawfully in the building, it was the duty of the police and firemen to protect the public by investigation to see that the fire would not start again and therefore to determine its cause, to check such conditions as gas and electrical installations, to safeguard inflammable materials, and to discover any dangerous conditions. A search for such purposes was lawful and proper and information discovered in making it was lawfully obtained. The entry being lawful the situation is in effect similar to discovery by an officer on the street of stolen goods seen through the window of an automobile. State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688; State v. Harre, Mo. Sup., 280 S.W.2d 41; State v. Reagan, Mo. Sup., 328 S.W.2d 26. We said in the Hawkins case (240 S.W.2d loc. cit. 692): "Observation of that which is open to view is not a search. A search (such as is prohibited by the constitutional provisions invoked) is not made by merely looking at

that which can be seen. 'It is not a search to observe that which is open and patent in either sunlight or artificial light.' " In this case, the articles found and conditions described were in the business part of a store to which the public was invited to enter and look around in shopping (see United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 434, 94 L.Ed. 653) and what the officers saw there was open and obvious and was seen after lawful entry. Therefore, there no unlawful search and seizure was shown. Having once lawfully discovered the articles and situation involved, it is our view that retaining possession of the store and going back the next morning for more pictures and further inspection thereof is of no legal significance on this issue. We hold that the court properly overruled the motion to suppress and correctly admitted the exhibits and testimony of which defendant complains.

The judgment is affirmed.

All concur.