**STATE of Missouri, Respondent,**

v.

**George Noble PURDIN, Appellant.**

No. 50231.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Charles J. Hulse, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Albert J. Stephan, Jr., Asst. Atty. Gen., Jefferson, City, for respondent.

DALTON, Judge.

Defendant was charged and convicted of the offense of robbery in the first degree under the Habitual Criminal Act and the court assessed defendant's punishment at twelve years' imprisonment in the state penitentiary. See §§ 560.120, 560.135, 556.280 and 556.290 RSMo 1959, V.A.M.S. The defendant on his own behalf and his court-appointed counsel for him filed timely motions for a new trial, which motions were considered by the trial court and overruled and defendant was duly sentenced in accordance with the verdict of the jury, the finding of the court as to the prior conviction of a felony, imprisonment and discharge, as charged in the information, and the punishment assessed by the trial judge under § 556.280 RSMo 1959, V.A.M.S. Defendant has appealed from the judgment and sentence entered against him. A free transcript on appeal has been provided and defendant has again been represented by his court-appointed counsel and a brief has been filed on his behalf in this Court. The assignments of error presented relate to the admission of evidence, the exclusion of evidence and the alleged improper closing argument by counsel for the State.

The cause was submitted to the jury by Instruction No. 2, authorizing the jury to return a verdict of guilty only upon the finding of the following facts, to wit: " * * * that if you believe and find from the evidence in this case, beyond a reasonable doubt, that at the County of Jackson and State of Missouri, on the 27th day of November, 1962, the defendant herein, George Noble Purdin, did then and there with force and violence in and upon one Kenneth R. Anderson, unlawfully and feloniously make an assault and took and carried away any money or property from his person or in his presence and against his will, by force and violence to his person, or by

putting him in fear of some immediate injury to his person, with felonious intent to convert the same to his own use without any honest claim to said money or property on the part of the defendant, and with intent to permanently deprive the said Kenneth R. Anderson of his ownership and without the consent of the said Kenneth R. Anderson, * * *."

The State's evidence tended to show that, on the evening of November 27, 1962, Kenneth R. Anderson and some five other persons, including Robert R. Street, had attended a meeting at Grain Valley and about 11 o'clock that evening they returned to Mr. Anderson's Queen City Feed Store, at 23rd Street and Kiger in the City of Independence, Jackson County, Missouri, where they had parked their cars and gone to the meeting with Mr. Street in Street's car, a "blue over white" 1958 Chevrolet Station Wagon. Mr. Anderson had left his 1955 Chevrolet Station Wagon parked directly in front of his feed store. When they returned Mr. Street drove up directly behind Anderson's car and left his car lights on, and a Mr. Clark entered his "pickup" truck and turned its headlights on. There were also other lights burning, including a neon parking-lot light on a post and some night lights at the front of Anderson's store. Mr. Anderson got out of Street's car and walked forward to his 1955 Chevrolet Station Wagon and opened the right-hand front door. As he did so the courtesy light inside the car came on and Mr. Anderson saw a man, later identified as defendant, lying on the seat. This man raised up with a large flashlight in one hand and a gun in the other and ordered Anderson to get in. Anderson did not do so, but instead ran around behind the car and hollered to the others not to leave, because there was a man in his car with a gun. The man with the gun, later identified as defendant, followed Anderson and at gunpoint ordered Anderson to get in the Street station wagon and drive.

Anderson testified: "I just got in and drove. He got in the back seat and I got in the front seat and he told me to drive

normal, not to attract no attention, so I just turned and he told me to turn north on Kiger, Kiger Road, which I did, and as we were going down the hill, why of course, one of the boys followed in his pick-up and then this fellow put the gun at the back of my head and I told him, 'Why don't you take this car and go?' You know, 'Wherever you want to.' He said, 'Well, if you don't get too close I will.' So we turned on the first street, which happened to be Walnut Street in Independence, and over the first hill, why, we shut the lights out and he let me out. He told me he wanted my money and he let me go." When the car was stopped on Walnut Street, both Anderson and the defendant got out of the station wagon, and defendant held the gun on Anderson and took his money, eight dollars. When Anderson and defendant got out of the car the courtesy light came on and Anderson more closely observed the man with the gun.

Before Anderson and defendant left the feed store with Street's station wagon, Mr. Street sought to intervene, but defendant held the gun on him and ordered him back. The defendant came very close to both Anderson and Street and they viewed him from a distance of only a few feet. Anderson had viewed defendant on three occasions: (1) when Anderson opened his right-hand station wagon door; (2) when the gun was held on him in the light of two automobile headlights and the other lights mentioned, and defendant had ordered him to get in and drive Street's station wagon; and (3) when both stood beside the station wagon on Walnut Street and defendant held the gun on him and took his eight dollars before releasing him.

The testimony of witness Robert R. Street tended to show that he heard Anderson's statement about the man with the gun; and that he saw the man holding the gun on Anderson. Street made a lunge toward him, to grab him, but defendant whirled around and threw the gun in his face and ordered him to get back if he didn't want to get hurt, so Street stepped back. He saw defendant force Mr. Anderson to get

in the front seat of Street's car, and defendant get in right behind him. Street then opened the door to the store and notified the police department, and was talking to the police before Mr. Anderson got the car backed out. He saw his station wagon turn east and then go north down Kiger Road, while he was talking to the police department and giving them the description of the car, and reporting what had happened.

Mr. Street testified that the area about the feed store was all lit up with night lights and other lights. He said the big fluorescent light sign lighted the driveway and parking area and that the car lights of his own car and Mr. Clark's pickup truck were on when defendant emerged from Anderson's car. Both Anderson and Street positively identified defendant as the man with the gun and as the man on trial in the case. Both thought the gun was a .45 Colt.

A few minutes after defendant left the Street's car, with Anderson at the wheel, Street heard over the radio that his station wagon had been wrecked at the intersection of Crane and Pacific Streets. Street got in another car and went there at once. When he arrived he saw the wreck of his own car and he also saw the defendant, the same man who had held the gun on him and on Anderson, only a few minutes before. He saw the same man in the courtroom and pointed out the defendant on trial. Both Street and Anderson at the trial identified the cap pistol used by the defendant in the robbery. At that time both had thought it was a real gun. When Street arrived at the scene of the wreck within ten minutes after it happened, he saw the defendant lying on the ground in a driveway.

The evidence further showed that Merle L. Dove, a police officer of the City of Independence, was in his patrol car when he received a report of the holdup and that a 1958 Chevrolet Station Wagon had been taken. He drove at once to Walnut and Pearl Streets, which he assumed might be an escape route from the location from which the holdup was reported. He parked his car, turned off the lights and was observing traffic when he saw a station wagon of the reported description enter Walnut Street two blocks to the east and come west. He reported these facts to headquarters, turned on his car lights and followed the station wagon as it turned left and went south on Hocker Street. When the car again turned left on Pacific, it sped east at high speed, but when it attempted to turn left on Crane Avenue, it failed to make the corner and went into a ditch, wrecked the car and the occupant was thrown out on the right-hand side of the car. No one else was in the car. Officer Dove was following only 200 feet behind when the wreck happened. He parked his car and took his riot gun and approached the person thrown from the car. As he did so, the party jumped up and ran east 40 or 50 feet and fell into a dark area by a tree. At that time another patrol car had arrived and officer Dove approached the spot where the man went down and he located him lying flat on his back, but the officer could not determine how defendant lay until he stepped on defendant's hand. He then held the riot gun on him, placed him under arrest and handcuffed him. He said that he arrested defendant within four minutes after receiving the report.

When he asked the man for the gun used in the holdup the man advised that it was on the front floorboard of the wrecked car. Dove had another officer retrieve it. As stated, the defendant was identified by Street and Anderson.

At the time of his arrest defendant was fully conscious and contended that he had been injured in the wreck. An ambulance was called and he was taken to a hospital for examination and treatment.

As to how the officer came to step on the mans' hand, he stated, "I could tell it was a form there but I couldn't tell which was an extremity."

▮ Appellant argues the insufficiency of this evidence on the issue of identifica-

tion as "the crucial issue in this case." In view of the State's evidence, as hereinbefore set out, there is and can be no insufficiency on that issue. The issue was for the jury and the jury has resolved that issue against the defendant.

The record further shows that on December 12, 1962, when defendant appeared for arraignment the following proceedings were had, to wit: " * * * the court informed said defendant of the nature of the charge against him and the punishment therefor, and of his right to counsel, and explained wherein the exercise of the said right might be of benefit to said defendant, and after interrogating said defendant, the court finds that defendant is mentally able and sufficiently informed to decide his need for counsel, and the court offered to appoint counsel for said defendant to conduct his defense, but defendant waived such right to counsel, thereupon said defendant, being duly arraigned before the court for plea, enters a plea of not guilty to the charge of Robbery, First Degree; * * *."

Thereafter, on December 24, 1962, on his own behalf the defendant filed a petition for a sanity hearing wherein he alleged "that on the night of November 27, 1962, that he was not sane when he committed two (2) crimes in the County of Jackson, Queen City [sic] Missouri, one (1) First Degree Robbery and (2) Second, Auto Thief. [sic] Subject claims that he was not in his right mind due to circumstances in the home of Mrs. Robert Yost, 9421 Winner Road, Independence, Missouri, * * * and that he did temporarily lose control of his mind and committed the above-mentioned crimes against the State of Missouri, * *."

Thereafter and apparently on his own motion the court recognized defendant's need of counsel and appointed C. J. Hulse to represent him. Counsel then filed a motion to suppress an alleged involuntary written statement previously given by defendant to the police officers. The motion was sustained. Thereafter, in the course of the trial, on motion of defendant's counsel an extended oral confession allegedly given by defendant to a police officer was excluded as having been made prior to the defendant having been advised of his constitutional rights and on various other grounds.

In the brief filed in this Court, counsel for appellant has not specifically designated the evidence which he contends was erroneously excluded by the trial court. Appellant states that "the trial Court erred in not allowing facts to be presented to the jury regarding the omission and failure of the state's witnesses to identify a criminal accused who was in the Court room preceding the trial of the present appellant as the wrong defendant." The nearest approach to a specification of error under this head is the further statement that: "The refusal of the trial court to allow cross examination of the prosecution witness' on their failure to distinguish in an earlier Court proceeding concerning the same charge of robbery was an improper infringement on the defendant's right to have these witnesses examined during his trial." These assignments are accompanied by a number of correct abstract statements of law about which there can be no dispute.

In the course of this trial (outside the hearing of the jury) it appeared from statements by counsel, the court and others that this case against this defendant had been set for trial on the preceding day and that the trial had started. After the lapse of 4 or 5 hours spent in qualifying a jury, etc., the court was advised that the defendant was not present; that the individual seated behind the court-appointed counsel for defendant was not the defendant, but a person by the name of Arnold; and that, while the mentioned abortive proceedings were in progress, the State's witnesses, subpoenaed and then excluded from the courtroom were waiting in the hall and had frequently appeared at a glass door and looked in the courtroom while waiting to be called to testify.

It also appeared from the testimony of witness Anderson on cross-examination,

that he had appeared at 9 a. m. on the day before to testify in the case against defendant Purdin and that he had looked through the "glass door windows" into the courtroom and from 30 feet away he saw counsel for the State and counsel who had been appointed to represent this defendant seated at the counsel table; and that he had observed that the person seated behind counsel for defendant *was not the defendant on trial* but was another person. The witness, although noting this fact, did not enter the courtroom nor make any inquiries. When the court ruled that this evidence as to what took place on the day before did not have anything to do with the issues on trial, the defendant undertook to intervene and address the court, contending repeatedly: "This trial is a mockery." In any event, as to witness Anderson, there was no exclusion of any competent evidence on the issue of identification as contended by appellant.

■ The same matter arose again in the cross-examination of witness Street who on the day before had stood out in the hall awaiting to be called in the Purdin case, which he assumed was being tried. When these facts were again developed, the State objected and the court sustained the objection. Counsel for the defendant then made an offer of proof as follows: "I would like to show he stood out there most of the morning, he knew that he was going to testify in the George Purdin trial and yet another man was in court here and he did not say anything to anybody. I feel that he failed to identify the person then." The court then overruled the defendant's offer of proof. The court did not err in excluding the mentioned evidence. It did not tend to impeach the testimony of the witness identifying the defendant as the robber.

Out of the presence of the jury the court stated: "I am addressing both of you, there's no question that yesterday morning this case was called for trial, one panel was examined. There was a man sitting behind Mr. Hulse. I assumed it was the defendant. Was I ever apprised that he was not the defendant?" Counsel for the State and for defendant then both insisted that they did not know they were trying the wrong person on the day before. Defendant then spoke up and said that his court-appointed counsel had seen him perhaps four times, but that he (defendant) had now cut off his beard. When defendant continued to make various statements, the court told him to stop, and advised defendant that he could take the witness stand later. Defendant replied: "I can't afford to take the witness stand. I have got a record, that automatically brings it up. Your Honor, I am trying to break my identification."

When officer Dove testified the defendant's counsel asked him about being in the hall and looking into the courtroom on the day before, while waiting to testify in the Purdin case, and counsel inquired whether the defendant on trial the day before was the person then seated behind counsel for defendant, the witness stated that he had no way of knowing because he never at any time saw the face of the man who was in the courtroom. He further answered: "When you came up to me yesterday and identified yourself as being the defense attorney, first thing that you told me was that you had found out that the man was not the defendant. At that time I told you the man had a lot more hair than he had when I arrested him. * * * I was talking about the man that you had identified to me, because I said, 'That guy in there' (indicating) at that time, and I said, 'He appeared to have more hair than he did at the time that I arrested him.' " The witness then positively identified the defendant on trial as the man he had seen thrown from the station wagon at the time of the mentioned wreck and who had gotten up and run 40 or 50 feet.

The record wholly fails to show that any competent, material evidence on the issue of identity of defendant was erroneously excluded or that the court unduly limited

the cross-examination of any of the State's witnesses who had looked through the glass door on the day before and had assumed that defendant's trial was in progress.

The witnesses subpoenaed by the State for the trial of defendant on the day before had no duty to determine who was seated behind attorney Charles J. Hulse, whether friend, defendant or another attorney, or to interfere. Assuming that they thought or assumed that the man behind attorney Hulse was defendant Purdin or someone else, they did not undertake to identify him as defendant Purdin. The record fails to show that the cross-examination of the State's witnesses was unduly limited or that the court erred in denying the offer of proof, as made, to impeach the testimony of the State's witnesses on the issue of identification of defendant.

Appellant further contends that: "The court erred in allowing the use of documents not properly certified as evidence against the defendant to establish that he had been convicted of prior crimes." It is contended that the copy of the records of the Federal Penitentiary at Leavenworth, Kansas, lacked the notary seal required in such certification and objection was duly entered on the lack of certification requirement due to the absence of any seal on the records introduced and allowed. No seal appears on the exhibit.

The document in question purported to be a certified copy of the records of the U. S. Penitentiary at Leavenworth, Kansas, and to show a judgment against defendant under which he was incarcerated there, including commitment papers, finger prints, photographs, sentence and other data and the date of his release. The judgment showed that he had entered a plea of guilty in the U. S. District Court for the Western District of Texas, El Paso Division, to a charge of interstate transportation of a stolen Buick automobile from Ohio to El Paso, and that he had received a three-year sentence.

The instrument purported to be a certified copy of the records of said penitentiary signed by the warden and their correctness sworn to on March 4, 1963, before an Administrative Assistant "C. & P. U. S. Penitentiary, Leavenworth, Kansas," and the instrument purported to show the authority of the administrative assistant to administer oaths under 18 U.S.C. § 4004. The document was admitted over objection and appellant complains thereof on this appeal, as stated. We think it unnecessary to determine the issue so presented in view of other matters shown by this transcript. We have hereto mentioned the fact, supra, that defendant had volunteered a statement to the court as to his record, and why he could not testify.

The transcript on appeal further shows that after the jury returned its verdict of guilty the following proceedings were had before the trial judge:

"THE COURT: Now, this man, stand up here. You have one previous conviction for a felony in El Paso, Texas?

"MR. PURDIN: That is right.

"THE COURT: How old are you?

"MR. PURDIN: Thirty-two.

"THE COURT: What was his sentence there?

"MR. PURDIN: Dyer Act.

"THE COURT: Dyer Act; what did you do?

"MR. PURDIN: I did twenty-seven months.

"THE COURT: Well, we have no facilities, the State is not in here yet with their Parole Officer for investigation. What do you do for a living when you work?

"MR. PURDIN: Radio and television technician, tailor, and sewing machine work.

"THE COURT: Well, there isn't any question in my mind but what you are

guilty of this charge and we have got to stop these hold-ups."

The court thereafter assessed defendant's punishment at twelve years in the state penitentiary.

While apparently no effort was made to see that the documents purporting to show the records of the U. S. Penitentiary at Leavenworth, Kansas, were certified in accordance with 28 U.S.C.A. §§ 1738 and 1739, nevertheless, in view of the admissions of defendant we think the proof sufficient on the issue of a prior conviction of a felony. State v. Baugh, Mo.Sup., 323 S.W.2d 685, 690 [6, 7]; State v. Reagan, Mo.Sup., 328 S.W.2d 26, 30 [9–11].

■ In this situation, in view of the admissions we find it unnecessary to rule the admissibility of the mentioned exhibit.

. The closing assignment of error in appellant's brief complains of a number of matters. The assignment is as follows: "The remarks made by the prosecutor regarding not having sympathy for robbers and vandals, about defense counsel apparently desiring that when a group is held up that all of them should be robbed, assumed that the defendant was guilty, were inflammatory, and highly prejudicial to the just outcome of the case."

■ While the specific part of the record relied upon is not definitely pointed out, this claim could only relate to the following proceeding as shown by the record: "Now I just can't have any sympathy for a man that goes out jumping on good citizens of this community, taking their property away from them, converting it to his own use, destroying other people's property. What kind of an excuse—you have heard only from Mr. Hulse who has told you— * * * that the State's case is weak, because we didn't bring in more witnesses. If we had brought in more witnesses every one of them would have said, 'That is the guy.' .

"MR. HULSE (interrupting): I object to that, it is a conclusion as to what they might have testified.

"THE COURT: The objection is sustained. Disregard the statement.

"MR. RODARTE: You have heard positive identification by the state's witnesses, and the only argument that you have heard from Mr. Hulse is that—well, if he really intended to rob the man, why didn't he rob all six of them? I can't see anything in that argument."

It will be noted that counsel obtained all of the relief requested and more. No reversible error appears.

While not required to do so, we shall refer to some other matters. In defendant's pro se motion for a new trial he complained of many matters that are not supported by the record and since these complaints do not prove themselves there is nothing before the court for review. Defendant also repeatedly complained in most general terms that he did not have a fair trial, but the record does not support his complaints in this respect. He further insists that "he did not have an adequate defense attorney to handle this case"; and that his attorney failed to call him as a witness in his own behalf. This last complaint is made, although defendant had previously stated to the court that he could not testify without disclosing to the jury his prior conviction.

■■ In connection with his complaints against his attorney in not handling his defense in a more satisfactory manner, it should be pointed out that the attorney was not responsible for the facts shown by this record, nor for the testimony of the State's witnesses, nor was there any duty on the attorney to fabricate a defense, and the attorney could properly exercise his own judgment as to the proper cross-examination of the witnesses. Much of the motion is devoted to mere argument and to a review of the record and many things outside the record, all from defendant's own viewpoint. He also reviews minor matters of conflict

between the testimony of the several State's witnesses and states his personal ideas on certain minor matters concerned with the impeachment of witnesses. He also complains of a matter not connected with the trial, to wit, that he was denied proper medical care and treatment while confined in the Jackson County Jail, and he further says that he was not permitted to show the extent of the personal injuries sustained by him at the time of the wreck when he was seeking to escape arrest. It was pointed out in the trial that the extent of his injuries did not tend to prove or disprove any issue in the case. Appellant has pointed to no material or prejudicial errors appearing in the course of the trial.

We have also examined other matters required to be reviewed under Supreme Court Rule 28.02, V.A.M.R., and find no reversible error. The judgment is affirmed.

All concur.